Raymond Anthony MONDAY v.
CANAL INSURANCE COMPANY

01-1038                                                73 S.W.3d 594

Supreme Court of Arkansas
Opinion delivered May 2, 2002

*Wright, Chaney, Berry, Daniel, Hughes & Moore, P.A.*, by: *Rodney P. Moore*, for appellant.

*Matthews, Sanders & Sayes*, by: *Marci Talbot Liles* and *Roy Gene Sanders*, for appellee.

DONALD L. CORBIN, Justice. This case presents an issue of first impression: Whether Ark. Code Ann. § 23-89-209 (Repl. 1999), requires an insurer to offer underinsured-motorist coverage in a commercial automobile liability policy. The Hot Spring County Circuit Court ruled that it did not and granted summary judgment to Appellee Canal Insurance Company. Appellant Raymond Anthony Monday now appeals the

order of summary judgment. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We affirm.

The facts of this case are not in dispute. On August 2, 1999, Monday was driving a truck for his employer, Alygar Trucking, Inc., when he was struck by a vehicle driven by Jada Montgomery. Monday was seriously injured in the accident, and he incurred medical expenses in excess of $40,000. Monday succeeded in collecting the limits of Montgomery's liability insurance, in the amount of $25,000. However, because his damages exceeded the amount recovered from Montgomery, Monday filed a claim with Canal for underinsured-motorist benefits. Canal denied Monday's claim on the ground that Alygar's policy did not contain underinsured-motorist coverage. Monday then filed suit in the circuit court, claiming that Canal was required to offer Alygar underinsured-motorist coverage pursuant to section 23-89-209. Because Canal had failed to do so, Monday asserted that such coverage should be implied as a matter of law and that Canal should be ordered to pay his claim.

Both parties filed motions for summary judgment, asserting that the only issue was one of law regarding the interpretation of section 23-89-209. Canal argued that section 23-89-209(a) only requires an insurer to offer underinsured-motorist coverage when issuing "private passenger automobile liability insurance." Canal asserted that it was not required to offer such coverage to Alygar because the policy issued was a commercial policy, covering nine trucks and tractors used in Alygar's business. In support of its motion, Canal offered the affidavit of its senior vice president, Carleton Dunn. Dunn stated that Canal is a commercial transportation speciality insurer, and that the policy issued to Alygar was a standard commercial truck liability policy. Dunn also stated that Canal was not authorized to insure private-passenger vehicles because it does not have private-passenger rates filed with any insurance department in the nation.

In contrast, Monday argued that the focus of section 23-89-209 is on the type of vehicle insured, not the type of policy issued. He argued that the type of vehicle that he was driving at the time of the accident, a dual-wheeled pickup truck, is a private-passen-

ger automobile. He distinguished such private-passenger automobiles from public-owned, common-carrier vehicles, such as buses or other forms of mass transit. He thus asserted that because the policy issued to Alygar covered pickup trucks, Canal was required to offer Alygar underinsured-motorist coverage regardless of whether the policy was a commercial one.

The trial court agreed with Canal and concluded that the legislature did not intend the underinsured-motorist statute to apply to commercial automobile liability policies covering vehicles that were used for commercial purposes. The trial court viewed the statute as being applicable only to those liability policies issued to individuals for personal automobiles. Accordingly, based on its construction of section 23-89-209, the trial court granted summary judgment to Canal.

■ This court has repeatedly held that summary judgment, although no longer viewed as a drastic remedy, is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See, e.g., Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001); *City of Barling v. Fort Chaffee Redev. Auth.*, 347 Ark. 105, 60 S.W.3d 443 (2001); *Thomas v. Stewart*, 347 Ark. 33, 60 S.W.3d 415 (2001). In the present case, the facts are undisputed. Indeed, both parties filed cross motions for summary judgment. As such, the case was decided purely as a matter of statutory interpretation.

■ We review issues of statutory interpretation *de novo*, as it is for this court to decide what a statute means. *See Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002); *Mayberry v. Flowers*, 347 Ark. 476, 65 S.W.3d 418 (2002). Thus, although we are not bound by the trial court's construction, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* The basic rule of statutory construction is to give effect to the intent of the legislature. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001); *Fewell v. Pickens*, 346 Ark. 246, 57 S.W.3d 144 (2001). In determining the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in

common language. *Id.* The statute must be construed so that no word is left void or superfluous and in such a way that meaning and effect are given to every word therein, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no reason to resort to rules of statutory interpretation. *Id.* If, however, the meaning of a statute is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* Statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible. *Id.*

The issue here is whether section 23-89-209 requires an insurer to offer underinsured-motorist coverage when issuing a commercial automobile liability policy. The statute provides in pertinent part:

> (a)(1) No *private passenger automobile liability insurance* covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state unless the insured has the opportunity, which he may reject in writing, to purchase underinsured motorist coverage. [Emphasis added.]

This provision was originally enacted by the General Assembly as Act 335 of 1987. Act 335 was titled "AN ACT to Require that Insurers Offer Underinsured Motorist Coverage to Insureds Purchasing Private Passenger Automobile Liability Policies; and for Other Purposes." The initial codification of Act 335 did not limit its scope to insurers issuing "private passenger automobile liability insurance." Rather, the statute's requirements were originally applicable to "[e]very insurer writing automobile liability insurance." *See* Ark. Code Ann. § 23-89-209(a) (Supp. 1987). In Act 1180 of 1993, the General Assembly amended section 23-89-209(a) to specifically apply to insurers issuing "private passenger automobile liability insurance."

■ ■ The question then is what is meant by the words "private passenger automobile liability insurance"? Construing

this term just as it reads, giving the words their ordinary and usually accepted meaning in common language, we conclude that the language describes a particular type of automobile liability insurance, namely that issued to individuals or families covering their personal automobiles. The words "private passenger automobile liability" obviously modify the word "insurance." Thus, we agree with the trial court that the focus of the statute is on the type of insurance coverage or policy being issued by the insurer, not on the particular type of vehicle being insured. Commercial automobile liability insurance policies that cover vehicles used for delivering goods or for other business purposes are not included within the parameters of "private passenger automobile liability insurance." Accordingly, it is of no consequence that the insured vehicle in this case, a dual-wheeled pickup truck, may be used by an individual as a personal vehicle.

Moreover, our holding today is supported by the legislature's declared intention in passing Act 335: "[T]o Require that Insurers Offer Underinsured Motorist Coverage to Insureds *Purchasing Private Passenger Automobile Liability Policies*." (Emphasis added.) We view this as a clear indication that the applicability of the underinsured-motorist statute depends on the type of insurance policy being purchased, not on the particular type of vehicle being insured.

Our conclusion finds further support in related statutes. For example, in Ark. Code Ann. § 23-89-301(5) (Repl. 1999), the legislature distinguished those policies purchased by individuals and families from commercial policies. That section, which is included in the subchapter pertaining to cancellation and nonrenewal, provides in pertinent part:

> (5) "Policy" means an automobile liability, automobile physical damage, or automobile collision policy, or any combination thereof delivered or issued for delivery in this state *insuring a single individual or husband and wife resident of the same household*, as named insured, and *under which the insured vehicles therein designated are of the following types only*:
>
> (A) A motor vehicle of the private passenger or station wagon-type *that is not used as a public or livery conveyance for passengers, nor rented to others*; or

(B) Any other four-wheel motor vehicle with a load capacity of one thousand five hundred pounds (1,500 lbs.) or less *which is not used in the occupation, profession, or business of the insured*, provided however, that this subchapter shall *not* apply to any policy:
(i) Issued under an automobile assigned risk plan;
(ii) *Insuring more than four (4) automobiles*; or
(iii) Covering garage, automobile sales agency, repair shop, service station, or public parking place operation hazards[.] [Emphasis added.]

Similarly, Ark. Code Ann. § 23-89-202 (Repl. 1999) demonstrates the legislature's intent to require certain minimum protections based on the type of coverage or policy issued. That section sets out the minimum requirements for medical and hospital benefits, income-disability benefits, and accidental-death benefits that must be provided by an insurer issuing any "automobile liability insurance policy covering any private passenger motor vehicle." Thus, the focus of this section is on the type of policy or coverage issued, not on the nature of the vehicle being insured.

■■■ In sum, construing the plain language of section 23-89-209(a)(1) together with the stated purpose of the underinsured-motorist statute, we conclude that the legislature intended to require insurers to offer underinsured-motorist coverage when issuing "private passenger automobile liability insurance" policies covering personal or private vehicles. The statute does not require insurers issuing commercial automobile liability policies to offer underinsured-motorist coverage. The undisputed proof in this case demonstrates that the policy issued by Canal to Alygar, Monday's employer, was a standard commercial truck liability policy, covering a fleet of vehicles used in Alygar's business. This is not the type of policy to which section 23-89-209 applies. Accordingly, we affirm the trial court's grant of summary judgment to Canal, as it was not required by law to offer Alygar underinsured-motorist coverage in conjunction with its commercial automobile liability policy.

■■■ We reject Monday's reliance on this court's and the court of appeals' holdings in *National Life & Accident Ins. v. Abbott*, 248 Ark. 1115, 455 S.W.2d 120 (1970), *Horn v. Imperial Cas. & Indem. Co.*, 5 Ark. App. 277, 636 S.W.2d 302 (1982), and *Cole-*

*man v. MFA Mut. Ins. Co.*, 3 Ark. App. 7, 621 S.W.2d 872 (1981). Those cases involved the interpretation of "private passenger automobile" and "automobile" as those terms were used and defined in insurance policies. They did *not* involve the interpretation of the term "private passenger automobile liability insurance," as that term is used in the underinsured-motorist statute. Indeed, each of those cases was decided before the legislature enacted the underinsured-motorist statute.

We likewise reject Monday's reliance on the court of appeals' decision in *Columbia Mut. Ins. Co. v. Estate of Baker*, 65 Ark. App. 22, 984 S.W.2d 829 (1999). The issue in that case was whether the uninsured-motorist statute, Ark. Code Ann. § 23-89-403 (Repl. 1999), required an insurer to offer uninsured coverage in conjunction with a garage owner's liability policy. The holding in that case is not applicable here because the language of section 23-89-403 is decidedly different from that used in section 23-89-209. Section 23-89-403 provides in pertinent part:

> (a)(1) No *automobile liability insurance* covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto and is not less than limits described in § 27-19-605, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. [Emphasis added.]

Notably missing from this provision are the words "private passenger" as a modifier of the term "automobile liability insurance." Clearly, the legislature saw fit to require insurers to offer *un*insured-motorist coverage whenever *any* automobile liability insurance policy is issued or delivered. The fact that the legislature chose specifically to require the offering of *under*insured-motorist coverage only in conjunction with the issuance of "private passen-

ger automobile liability insurance" policies demonstrates its desire to exclude commercial policies from the requirements of section 23-89-209.

Finally, we reject Monday's contention that subsection (b) of 23-89-209 requires reversal in this case. That section provides:

> (b)(1) Underinsured motorist coverage as described in this section shall not be available to insureds nor shall insurers be mandated to offer same unless the insured has elected uninsured motorist coverage as provided by § 23-89-403.
>
> (2) Underinsured motorist coverage shall not be issued without uninsured motorist coverage being issued in combination therewith.

Monday argues that this section requires an insurer to offer underinsured coverage any time that the insured elects uninsured coverage. This argument is misplaced. As stated in the preceding paragraph, uninsured coverage must be offered in conjunction with any type of automobile liability insurance coverage, while underinsured must only be offered with one particular type of automobile liability insurance, namely private-passenger coverage. Thus, we view this provision as requiring only that in those instances where underinsured-motorist coverage must be offered, i.e., when issuing "private passenger automobile liability insurance," and the insured elects uninsured-motorist coverage, the insurer must offer underinsured coverage in coordination therewith. Accordingly, we affirm the trial court's grant of summary judgment to Canal.

IMBER, J., not participating.