James Richard MAYS and William Coke Viser *v.* Rhonda COLE, County Clerk of Clark County, Arkansas, and Morgan A. Berry

08-1231                                                      289 S.W.3d 1

Supreme Court of Arkansas
Substituted Opinion delivered November 3, 2008

*Andi Davis* and *Cliff Jackson*, for appellants.

*Ralph Charles Ohm*, for appellee Rhonda Cole.

*Morgan A. Berry*, pro se appellee intervenor.

ANNABELLE CLINTON IMBER, Justice. Appellants James Richard Mays and William Coke Viser are appealing an order of the Circuit Court of Clark County that upheld the sufficiency of signatures to an initiative petition to be placed on the ballot at the November 4, 2008 general election. The initiative would allow the directors of Arkansas Beverage Control to issue permits for the retail sale of vinous, spirituous, or malt liquor in Clark County. Our jurisdiction to determine this matter is pursuant to Arkansas Supreme Court Rule 1-2(a)(4) (2008). For the reasons stated herein, we reverse the circuit court's ruling and direct that no votes cast on this initiative be counted.

On September 15, 2008, Appellee, Rhonda Cole, Clark County Clerk, certified the "wet/dry" initiative petition for

placement upon the ballot at the November 4, 2008 general election. Of the 6116 signatures submitted by proponents of the initiative, Appellee certified 4168, leaving twenty-eight more than the 4140 signatures required by statute,[1] as determined by Appellee, for this initiative to be placed on the November ballot. Ark. Code Ann. § 3-8-205 (Repl. 2008). Appellee testified that her office reviewed every signature submitted and removed 1948 of them because they were duplicates, signed on the same day that the signers signed their voter registration applications according to the record, or signed by persons who were not residents of Clark County.

Appellants filed a complaint on September 19, 2008, and an amended complaint on September 24, 2008, challenging the validity of the certification. Appellants alleged that many of the signatures counted for the purpose of certification were in fact void because, among other reasons, (1) some signatures were signed by people who registered to vote on the same day they signed the petition and before they became "registered voters," and (2) two signatures were forged and were not signed by individuals whose names appeared on the petition. On September 30, 2008, the circuit court granted Morgan A. Berry's motion to intervene and held a hearing on this matter. During the hearing, Appellants submitted evidence through twenty-six witnesses (by actual or stipulated testimony), who verified that they signed the petitions on the same day they signed their voter registration applications. Appellants also presented affidavits by two people, whose names and signatures appear on the petition, stating that they did not sign the petition. Appellee and Intervenor Appellee (together "Appellees") did not produce any evidence to the contrary, or otherwise dispute the evidence produced by Appellants. The circuit court entered an order on October 17, 2008, dismissing Appellants' complaint. The circuit court held, among other things, that (1) Appellants failed to produce evidence that any signature, with the exception of two alleged forgeries, certified by Appellee should be invalidated, and (2) signatures of those who registered to vote on the same day as they signed the petition were

---

[1] A petition must be signed by thirty-eight percent of the qualified electors in any given county in order to certify a "wet/dry" election. Ark. Code Ann. § 3-8-205 (Repl. 2008). The county clerk determines the number of signatures needed based on the number of voters registered as certified by the county clerk to the Secretary of State by the first of June of each year pursuant to Arkansas Constitution, amendment 51.

valid, and any signature deleted from the petition solely because the voter registration application and petition were signed on the same date should be certified as valid signatures.

Appellants filed a timely notice of appeal and a motion to expedite the appeal on October 23, 2008, which we granted on October 24, 2008. On appeal, Appellants argue that (1) a signature is not valid if the signer signed the petition before he or she was registered to vote, and (2) Appellants produced evidence of two forged signatures on a petition that Appellee counted, which shifted the burden of proof to Appellees to prove the genuineness of the signatures on that petition, and Appellees have failed to meet this burden. We begin with Appellants' first argument.

## I. Validity of Signature

The circuit court held that a signature was valid when the signer signed the petition on the same day he or she signed the voter registration application. The court further held that a strict construction of the provisions concerning local referendums would result in an arbitrary denial of an individual's reasonable expectation that, once the voter registration application was completed as required by law, he or she was a registered voter and entitled to exercise all the rights of a registered voter.

Appellants argue that, according to section 9(c)(1) of Amendment 51 to the Arkansas Constitution, a voter is not qualified to sign a petition before his or her completed voter registration application is received and acknowledged by the permanent registrar, in this case, the Appellee. As a result, those signatures signed by unqualified voters are void and must be removed from the petition. Appellee concedes that counting signatures by voters who signed their voter registration applications on the same day violates Amendment 51. Intervenor Appellee, on the other hand, advocates the standard of reasonable expectation of a voter as articulated by the circuit court and argues that this interpretation adds certainty to the interpretation of section 9(c)(1) of Amendment 51 "if applied for the period between registration and the recording of that registration."

We review issues of statutory construction de novo. *Sturdivant v. Sturdivant*, 367 Ark. 514, 517, 241 S.W.3d 740, 743 (2006). The basic rule of statutory construction is to give effect to the intent of the legislature. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 289, 213 S.W.3d 607, 614 (2005). Where the language of a statute

is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* However, when a statute is ambiguous, we must interpret it according to the legislative intent, and our review becomes an examination of the whole act. *Id.* We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We also look to the legislative history, the language, and the subject matter involved. *Id.* Additionally, statutes relating to the same subject are said to be in pari materia and should be read in a harmonious manner, if possible. *Id.*

This initiative was placed on the ballot as a local option election under the Arkansas Alcoholic Control Act, as codified in Ark. Code Ann. §§ 3-1-101 to -606 (Repl. 2008). Section 3-8-204 of the Local Option Code establishes rules on petition procedure and section 3-8-204(e) provides:

> Any person who is a qualified elector of the State of Arkansas and who is a resident and registered voter of the county, municipality, ward, precinct, or other defined area in which a local option election is being requested by petitions under Initiated Act No. 1 of 1942, §§ 3-8-201 – 3-8-203 and 3-8-205 – 3-8-209, may sign the local option petition in his or her own proper handwriting and not otherwise.

Ark. Code Ann. § 3-8-204(e) (Repl. 2008). Appellee certified the sufficiency of the petition pursuant to section 3-8-205 of the Local Option Code. That section provides in relevant part as follows:

> (a)(1) When thirty-eight percent (38%) of the qualified electors shall file petitions with the county clerk of any county within this state praying that an election be held in a designated county, township, municipality, ward, or precinct to determine whether or not licenses shall be granted for the manufacture or sale or the bartering, loaning, or giving away of intoxicating liquor within the designated territory, the county clerk within ten (10) days thereafter shall determine the sufficiency of the petition.
>
> (2) The total number of voters registered as certified by the county clerk to the Secretary of State by the first of June of each year

pursuant to Arkansas Constitution, Amendment 51 shall be the basis upon which the number of signatures of qualified electors on petitions shall be computed.

(3) A person shall be a registered voter at the time of signing the petition.

(b) If it is found that thirty-eight percent (38%) of the qualified electors have signed the petition, the county clerk shall certify that finding to the county board of election commissioners, and the question shall be placed on the ballot in the county, township, municipality, ward, or precinct at the next biennial general election as provided in § 3-8-101.

Ark. Code Ann. § 3-8-205 (Repl. 2008). Act 963 of 1995, codified at Ark. Code Ann. § 7-1-101(22) (Repl. 2007), defines a "qualified elector" as a person who holds the qualifications of an elector and who is registered pursuant to Arkansas Constitution, amendment 51.

Article 5, section 1 of the Arkansas Constitution, incorporating amendment 7, governs both state-wide and local initiatives and referendums. Ark. Const. art. 5, § 1. It also provides, under subhead "verification of petition," that "only legal voters shall be counted upon petitions." *Id.* Section 7-9-101(5) of the Arkansas Code defines a "legal voter" as "a person who is registered at the time of signing the petition pursuant to Arkansas Constitution, amendment 51." Ark. Code Ann. § 7-9-101(5) (Repl. 2007). Section 9 of amendment 51 to the Arkansas Constitution sets forth the general requirements for voter registration. That section, in pertinent part, states:

(c)(1) The permanent registrar shall register qualified applicants when a legible and complete voter registration application is received and acknowledged by the permanent registrar.

(2) Any person who assists applicants with a voter registration application as part of a voter registration drive or who, in furtherance of a voter registration drive, gathers or possesses completed applications for submission to the permanent registrar or Secretary of State shall deliver all applications in his or her possession to the permanent registrar or Secretary of State within twenty-one (21) days of the date on the voter registration application and, in any event, no later than the deadline for voter registration for the next election.

. . . .

> (d) The permanent registrar shall notify applicants whether their applications are accepted or rejected, or are incomplete. If information required by the permanent registrar is missing from the voter registration application, the permanent registrar shall contact the applicant to obtain the missing information.

Ark. Const. amend. 51, § 9. Section 2 of amendment 51 defines "permanent registrar" as "the County Clerk in each of the several counties of this State." Ark. Const. amend. 51, § 2.

█ It is, therefore, clear from the Constitution and the statutes that a person has to be a registered voter at the time he or she signs the petition and a person is not registered until the county clerk receives and acknowledges his or her voter registration application. Our case law is also explicit about this requirement. In *Roberts v. Priest*, we held that a petition signer must have been a registered voter at the time he signed the petition. 334 Ark. 503, 516, 975 S.W.2d 850, 855 (1998).

The circuit court concluded that an unregistered voter could sign the petition if he or she had a reasonable expectation that once the voter registration application was completed, he or she was a registered voter and entitled to exercise the rights of a registered voter. This conclusion is not supported by authority and is contrary to amendment 51 to the Arkansas Constitution. Section 9(c)(1) of amendment 51 clearly indicates that a qualified applicant is not registered until the permanent registrar "receives" and "acknowledges" a "legible and complete voter registration application." Ark. Const. amend. 51, § 9(c)(1). Furthermore, acceptance of an application by a person who assists applicants with their voter registration applications as part of a voter registration drive has no legal effect on the registration of the applicant, and the person has twenty-one days to deliver the application to the permanent registrar. Ark. Const. amend. 51, § 9(c)(2). Accordingly, any expectation that one is registered and has the right to sign a petition immediately after he or she submits the application to a canvasser at a voter registration drive on a university campus, as in the instant case, is unreasonable. It may be true that many signers did believe that they were registered immediately after they signed their applications and expected their signatures to be counted. Yet, ignorance of law, by either the canvassers or the

signers, is no excuse and cannot make one's unreasonable expectation reasonable. *Belding v. Whittington*, 154 Ark. 561, 567, 243 S.W. 808, 810 (1922).

To require a voter to be registered before signing a petition is not only the correct interpretation of the statutes, but it is also good policy. As Justice Tom Glaze reiterated in a concurring opinion, if initiative-petition signers were not required to be registered voters, the Secretary of State or permanent registrar would have no list of voters to verify petitions circulated pursuant to Amendment 7. *Roberts v. Priest*, 334 Ark. at 518, 975 S.W.2d at 856 (Glaze, J., concurring).

## II. *Two Allegedly Forged Signatures*

Appellants allege that the canvassers committed fraud in obtaining the signatures because the circuit court found that two signatures were forged. Appellants then argue that where fraud on the part of canvassers who obtained the signatures is shown, the prima facie case made by the affidavit of a circulator in favor of genuineness of the petition is overcome, thereby shifting the burden of proof to Appellees to establish the genuineness of each signature on the petition. Appellants allege that, because Appellees did not produce any evidence to verify the signatures, they have not satisfied their burden of proof.

In response, Appellee asserts that all of Appellants' witnesses indicated that they knew that they were signing the petition and knew what the petition meant, and none of them testified that they had been defrauded, tricked, or inappropriately advised as to what they were signing, with the exception of two persons who claimed their signatures were forged. Appellee, therefore, concludes that there was not a widespread effort by the canvassers to defraud persons into signing this petition. Intervenor Appellee further responds that the burden of proof does not shift to Appellees until there has been a finding of forgery due to the willful misconduct by a canvasser. In that regard, Intervenor Appellee notes that the order of the circuit court only "mentions" the alleged forgery of two signatures and made no finding that the two signatures were in fact forged.

The Arkansas Constitution places the burden of proof upon the person or persons attacking the validity of the petition. Ark. Const. art. 5, § 1. Under the subhead on verification of petitions, article 5, section 1 of the Arkansas Constitution provides:

> Only legal voters shall be counted upon petitions. Petitions may be circulated and presented in parts, but each part of any petition shall have attached thereto the affidavit of the person circulating the same, that all signatures thereon were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine, and that the person signing is a legal voter and no other affidavit or verification shall be required to establish the genuineness of such signatures.

Ark. Const. art. 5, § 1. This provision, as to the effect to be given the affidavit of the circulator, has been interpreted to mean that the circulator's affidavit is given prima facie verity. *Parks v. Taylor*, 283 Ark. 486, 491, 678 S.W.2d 766, 768 (1984) (citing *Sturdy v. Hall*, 201 Ark. 38, 143 S.W.2d 547 (1940)). But this presumption is not conclusive. *Id.* If it is shown that the affidavit attached to a particular petition is false, that petition loses the presumption of verity. *Id.* The burden will then shift to the proponent of the petition to establish the genuineness of each signature. *Id.*

According to Intervenor Appellee, the burden shifts to Appellees only when there has been a finding of willful misconduct on the part of the circulator and a finding of forgery. That contention by Intervenor Appellee, however, must fail because the General Assembly has spoken on this point with respect to county initiative petitions. *See* Act of Mar. 24, 1977, No. 742, 1977 Ark. Acts 1736, now codified at Ark. Code Ann. § 14-14-915(d) (Repl. 1998). Section 14-14-915(d) reads:

> (d) *Sufficiency of Petition.* Within ten (10) days after the filing of any petition, the county clerk shall examine and ascertain its sufficiency. Where the petition contains evidence of forgery, perpetuated either by the circulator or with his connivance, or evidence that a person has signed a name other than his own to the petition, the prima facie verity of the circulator's affidavit shall be nullified and disregarded, and the burden of proof shall be upon the sponsors of petitions to establish the genuineness of each signature. If the petition is found sufficient, the clerk shall immediately certify such finding to the county board of election commissioners and the quorum court.

Ark. Code Ann. § 14-14-915(d) (Repl. 1998). Section 14-14-915(d) does not include the "conscious falsity" element. *Save Energy Reap Taxes v. Yota Shaw & Morris Street*, 374 Ark. 428, 288 S.W.3d 601

(2008). The statutory language only requires "evidence of forgery, perpetuated either by the circulator or with his connivance, or evidence that a person has signed a name other than his own to the petition," in order for the burden to shift. There is no requirement that the forgery be proved. We have held that section 14-14-915(d) controls this issue for county initiatives. *Id.*

Appellants submitted affidavits by two people, whose alleged signatures appear on a petition, in which they state under oath that they did not sign the petition. The circuit court's order acknowledges that Appellants produced evidence of two allegedly forged signatures. Therefore, they have satisfied their burden of proof under section 14-14-915(d), and the burden of proof shifted to Appellees to prove the genuineness of the signatures on the petition. In view of the fact that Appellees failed to produce any evidence on this issue, all the signatures on the petition that contains the alleged forgeries must be decertified. According to the record, fourteen of the signatures on that petition, including the two allegedly forged signatures, were counted for the purpose of certification. We, therefore, direct that all fourteen signatures be decertified.

### III. Twenty-Six Signatures by Unregistered Voters

We have already held that a person is not qualified to sign the petition before he or she has registered to vote with the county clerk. Accordingly, all the signatures by signers who signed their voter registration applications on the same day that they signed the petitions should be, and hereby are, declared void. Appellee testified that her office did not certify the signatures that were signed on the same day that the signers filled out and signed voter registration applications. Despite that testimony, Appellants claim that, among the signatures certified by Appellee, there are still signatures by signers who were not registered voters at the time they signed the petition. In support of their claim, Appellants submitted evidence through twenty-six witnesses, whose names and signatures appear on the petition. These witnesses (either by actual or stipulated testimony) verified that they registered on the same day that they signed the petition. Two of the witnesses also testified that they witnessed other signers signing the petitions and their voter registration applications on the same day. The record shows that the signatures of these twenty-six witnesses were counted for purposes of certification. Appellees did not present

any additional evidence, nor did they dispute the testimony of the twenty-six witnesses. They only argue that even if the twenty-six signatures were decertified, the petition still has the minimum number of signatures required for placement on the ballot. As we have already found that fourteen other signatures[2] are void and have to be decertified, the petition does not meet the signature requirement of section 3-8-205 of the Local Option Code.

To summarize, we hold that the circuit judge erred in construing the relevant provisions of the Arkansas Constitution and statutes to allow persons to sign the petition before they became registered voters. We, therefore, reverse the circuit court's ruling and set aside the certification of the question regarding the sale of alcoholic beverages in Clark County for placement on the November 4, 2008 ballot. We further direct that no votes cast on this question be counted.

The mandate shall issue immediately.

Reversed.

---

[2] None of the twenty-six signatures by people who signed the petitions and their voter registration applications at the same time are included in the fourteen signatures decertified earlier.