STATE of Arkansas *ex rel.* ARKANSAS DEPARTMENT of PARKS & TOURISM *v.* Dr. Leroy O. JESKE, Trustee of the Trudy J. Jeske Revocable Trust dated May 28, 1991

05-684                                                    229 S.W.3d 23

Supreme Court of Arkansas
Opinion delivered February 16, 2006

---

280

*Mike Beebe*, Att'y Gen., by: *Don K. Barnes*, Ass't Att'y Gen., for appellant.

*Cypert, Crouch, Clark & Harwell*, by: *Marcus W. Van Pelt*, for appellee.

DONALD L. CORBIN, Justice. Appellant State of Arkansas *ex rel.* Arkansas Department of Parks and Tourism appeals the order of the Benton County Circuit Court dismissing its complaint for condemnation of land owned by Appellee Dr. Leroy O. Jeske, Trustee of the Trudy J. Jeske Revocable Trust dated May 28, 1991. On appeal, Appellant argues that it was error for the trial court

to dismiss its complaint on the basis that it did not follow the procedures set forth in Ark. Code Ann. § 22-4-106 (Repl. 2004), because it was not required to follow those procedures. Appellant also argues that the trial court erred in dismissing its suit on the basis that there was no evidence that the grant funding the condemnation was properly disbursed. We find no error and affirm.

On May 10, 2004, Appellant filed its complaint, pursuant to Ark. Code Ann. §§ 22-4-102 (Repl. 2004) and 22-4-103(1)(A) and (B) (Repl. 2004), stating its intent to acquire and incorporate into Hobbs State Park certain lands owned by Appellee and situated in Benton County. According to the complaint, the lands were needed for future campgrounds and trails according to the long-range development plan approved by the Arkansas State Parks Recreation and Travel Commission. The complaint prayed that title to the lands be vested in Appellant.

That same day, Appellant also filed a "Declaration of Taking" averring that the property at issue, as well as its access rights, was condemned and taken under the power of eminent domain and the police power pursuant to Article 2, Sections 22 and 23 of the Arkansas Constitution, as well as sections 22-4-102 and 22-4-103(1)(A) and (B). According to this declaration, the public use for which the property and access rights were taken was to provide and maintain an adequate state park at Hobbs State Park. The declaration further stated that $547,000.00 was the amount estimated to be just compensation for the property and access rights and that such money had been deposited into the Registry of the Court.

On May 10, 2004, the circuit court entered an "Order For Delivery Of Possession," finding that Appellant was entitled to possession of the lands described in the complaint and that the amount of money deposited into the Registry of the Court was just compensation based on the appraised value of the property.

Appellee filed an answer on June 8, 2004, denying that Appellant was entitled to condemn and take the property described in the complaint. He also denied that there was any public necessity for the taking. Appellee also pled affirmatively that the complaint should be dismissed, pursuant to Ark. R. Civ. P. 12(b)(6), and requested that the Order of Possession be set aside because of Appellant's failure to state facts upon which relief could

be granted. Specifically, Appellee stated that Appellant failed to allege that it had complied with the requirements of section 22-4-106.

Appellant subsequently filed a motion for summary judgment, arguing that the funding for the acquisition at issue was obtained through a grant from the Arkansas Natural and Cultural Resources Council (ANCRC) and not section 22-4-106; thus, it was not required to comply with the requirements of that code section. Attached in support of its motion was the affidavit of Greg Butts, Director of Arkansas State Parks. Therein, Mr. Butts averred that the acquisition of Appellee's land was approved by the ANCRC and that the appropriation for the grant from the ANCRC was made by Act 1102 of 2001.

Appellee filed a response to the motion arguing that Appellant was not entitled to summary judgment and requested that the trial court rule on its motion to dismiss filed pursuant to Rule 12(b)(6).

On February 2, 2005, the trial court entered an order dismissing Appellant's complaint. In so ruling, the trial court found that Appellant had failed to state a cause of action for which relief may be granted. The trial court noted that the grant funding the acquisition had a project beginning date of July 1, 2002, and an ending date of June 30, 2003, but that Appellant did not file its complaint until May 10, 2004. The court further noted that there was no evidence in the record that Appellant had filed an application for extension of the grant or that any such extension had been approved. Relying on the bylaws of the ANCRC, as well as certain sections of Act 1102, the appropriations act that was the source of the grant at issue here, the trial court stated that Appellant was required to comply with all applicable state laws in attempting to acquire Appellee's land. The trial court ultimately concluded that Appellant failed to follow the procedures set forth in section 22-4-106 and, thus, dismissal of its complaint was warranted. The trial court further noted that the bylaws of the ANCRC and section 31 of Act 1102 required Appellant to follow applicable state law in acquiring property. Finally, the trial court ruled that the Order of Possession was void *ab initio* and therefore set it aside.

Appellant filed a motion for reconsideration on February 14, 2005. Therein, Appellant stated that it had attached exhibits to its motion for summary judgment establishing that the grant was

proper under the policies of the Department of Parks and Tourism, as well as the ANCRC.[1] Appellant further averred that the grant had been extended by an appropriation in Act 1605 of 2003. Attached to the motion for reconsideration was a copy of the application seeking extension of the grant.

A second order was entered by the trial court on February 25, 2005, denying Appellant's motion for reconsideration. In that order, the trial court found that the supporting material submitted by Appellant with regard to the grant extension was untimely pursuant to Ark. R. Civ. P. 56(c)(1). The trial court again determined that Appellant had failed to comply with the procedures set forth in section 22-4-106, as well as the requirements of the ANCRC bylaws and section 31 of Act 1102. This appeal followed.

Before turning to the merits of the arguments raised in the instant appeal, we must first determine the appropriate standard of review. In its order, the trial court granted Appellee's motion to dismiss pursuant to Rule 12(b)(6). In that same order, however, the trial court stated that it reached its findings after reviewing the "Plaintiff's Motion for Summary Judgment, the Defendant's response to the Motion for Summary Judgment, the Briefs in support thereof, and the Defendant's Motion to Dismiss[.]" Included as exhibits to those pleadings were affidavits, a copy of the ANCRC's bylaws, copies of the applicable acts, and other supporting materials. The trial court specifically referred to these materials in its order; thus, because the trial court considered matters outside the pleadings, we will review this case as we would an appeal from an order granting summary judgment. *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005).

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005); *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d

---

[1] Appellant first raised the issue that the grant had been extended through an appropriation in Act 1605 of 2003 in its reply to Appellee's response to the motion for summary judgment. Attached to the brief were the affidavits of Greg Butts and Randy Dennis stating that the grant had been properly extended, but the application for extension was not submitted to the court until Appellant filed the motion for reconsideration.

710 (2001). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

As its first point on appeal, Appellant argues that the trial court erred in dismissing its complaint pursuant to Rule 12(b)(6), on the basis that it failed to follow the procedures set forth in section 22-4-106, because it was not required to follow those procedures. Specifically, Appellant argues that the funding for the acquisition in the instant case stemmed from an appropriation in Act 1102, which was subsequently renewed by Act 1605. Thus, according to Appellant, these appropriation acts are more specific legislation than section 22-4-106, and the more specific legislation should control.

Appellee counters that Appellant was required to follow the dictates of section 22-4-106 and its failure to state in its complaint that it had followed such procedures rendered the complaint defective, so that dismissal was warranted. Additionally, Appellee argues that the appropriations of Acts 1102 and 1605 were nothing more than general appropriations to the Department of Arkansas Heritage and did not specifically authorize the acquisition of the land in this case. Moreover, according to Appellee, nothing in the appropriations acts governs the procedures to be utilized by Appellant when acquiring land. Finally, Appellee points out that the trial court correctly determined that the bylaws of the AN-CRC require an agency applying for acquisition funds to submit or have on file with the ANCRC the procedures required for acquisition.

We begin our analysis of this point by observing that we review issues of statutory interpretation *de novo*, as it is for this court to decide what a statute means. *Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 201 S.W.3d 900 (2005); *Monday v. Canal Ins. Co.*, 348 Ark. 435, 73 S.W.3d 594 (2002). Thus, although we are not bound by the trial court's interpretation, in the absence of a

showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.*

We recently articulated our rules of statutory interpretation in *Rose v. Arkansas State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). Therein, we stated that:

> The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. However, when a statute is ambiguous, we must interpret it according to the legislative intent, and our review becomes an examination of the whole act. We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. We also look to the legislative history, the language, and the subject matter involved. Additionally, statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible.

*Id.* at 289, 213 S.W.3d at 614 (citations omitted).

Remaining mindful of these principles, we turn to the provisions at issue in the instant case. Pursuant to section 22-4-103, the State Parks, Recreation and Travel Commission, shall have the sole authority:

> (1)(A) To acquire in the name of the state by purchase, lease, or agreement such land within the state as it may deem necessary or proper for the extension, development, or improvement of the state park system.

> (B) If the department is unable to agree with the owner of the land, or if by legal incapacity or absence of the owner, no agreement can be made for the purchase, the land may be acquired by condemnation proceedings instituted in the name of the state *in the manner provided by law for the condemnation of property for public purposes.* [Emphasis added.]

Section 22-4-106 sets forth the procedures for establishing state park property and provides in relevant part:

(a) The Department of Parks and Tourism and the State Parks, Recreation, and Travel Commission are directed to consult with and seek the advice of the Governor, the Director of the Department of Finance and Administration, and the Legislative Council before establishing and acquiring properties for new state parks or before making acquisitions of real property for additions to or expansions of existing state parks which have not been specifically authorized or funded by the General Assembly.

(b) The advice of the Governor, the director, and the Legislative Council shall be sought in writing by the department or the commission at least sixty (60) days prior to the final approval by the commission of any formal action to establish a new state park or to make acquisitions of real property for additions to or expansions of existing state parks if the action has not previously received specific legislative authorization.

According to Appellant, it was not required to follow the dictates of this section because the source of funds used to acquire Appellee's land was a grant from the ANCRC that was funded by Act 1102. Appellant avers that the appropriation set forth in Act 1102, and renewed in Act 1605, are the more specific provisions and, thus, should control over the more general provisions of section 22-4-106. We disagree.

A review of Act 1102 reveals that it is an appropriations act "for personal services and operating expenses for the Department of Arkansas Heritage[.]" Section 22 sets forth an appropriation of $12 million for "grants/aids for state-owned lands or historic sites" to the ANCRC for the biennial period ending June 30, 2003. Section 28 provides that the Director of Arkansas Heritage shall be the disbursing officer for the appropriation set out in Section 22 and allows for transfer of such appropriation to a state agency. Section 31 further provides that disbursements of funds authorized by the act shall be in compliance with other state laws. Act 1605, which extended the ANCRC grant program until the biennial period ending June 30, 2005, provided a general appropriation of $14 million.

Nothing in Acts 1102 or 1605 specifically provided funding for Appellant to acquire Appellee's land. Moreover, nothing in either of those acts set forth any criteria to be followed in acquiring certain lands, other than to state that disbursements were to comply with other applicable state laws. Therefore, we cannot say that these acts constitute more specific legislation

thereby negating any requirement that Appellant follow the procedures set out in section 22-4-106 for acquiring lands for additions or expansions of existing state parks.

In fact, the appropriations set out in Acts 1102 and 1605 can be read harmoniously with the provisions of section 22-4-106. Clearly, the acts provide the funding mechanisms for Appellant to acquire additional lands, while section 22-4-106 establishes the procedures to be followed by Appellant when it attempts to acquire such lands. As we previously stated, we will interpret legislation relating to the same subject matter in a harmonious manner if possible. *See Rose*, 363 Ark. 281, 213 S.W.3d 607.

■ Our conclusion in this regard is further supported by a review of Act 729 of 1987, now codified at Ark. Code Ann. § 15-12-101 (Repl. 2003), which established the ANCRC. Section 5 of that act reads in pertinent part:

> It is not the intention of this Act that the said Council shall itself manage, operate, or maintain any lands so acquired, but, rather, that it shall, from time to time in its own discretion, make grants to other agencies of the State authorized by law to acquire, manage, for operate [sic], and maintain such lands.

Article XII, § III.G.3 of the ANCRC's bylaws, provides in pertinent part that: "agencies applying for acquisition funds must submit or have on file with the Council the procedures required for acquisition by their respective board, commission, or council, and verify that such procedures have been met." It is therefore clear to us that the role of the ANCRC in acquiring lands is limited to establishing grants for such acquisitions. More importantly, such grants are contingent on an agency following other applicable state laws, such as section 22-4-106.

■ Finally, we are not persuaded by Appellant's contention that following the requirements of section 22-4-106 in obtaining written approval from the Governor, Director, and Legislative Council is redundant where the acts funding the condemnation were approved by the legislature and the Governor. Again, we reiterate that the provisions of Acts 1102 and 1605 were nothing more than general appropriations to the ANCRC to be used to establish grants. The Governor and the General Assembly never reviewed or approved the particular condemnation at issue

in this case. Thus, there is no redundancy in requiring such approval before the State is allowed to proceed to condemn and acquire the property.

In sum, if we were to accept Appellant's argument that section 22-4-106 was not applicable, we would be ignoring our prior case law holding that statutes that relate to the power of eminent domain should be strictly construed in favor of the landowner. *See Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001); *Columbia Cty. Rural Dev. Auth. v. Hudgens*, 283 Ark. 415, 678 S.W.2d 324 (1984); *Loyd v. Southwest Ark. Util. Corp.*, 264 Ark. 818, 580 S.W.2d 935 (1979). This we will not do.

Accordingly, we cannot say that the trial court erred in dismissing Appellant's cause of action on the basis that it failed to follow the procedures for condemnation established by section 22-4-106.

As a second point, Appellant argues that the trial court additionally erred in dismissing its complaint on the basis that there was no evidence that it had filed for an extension of the grant established by Act 1102. In this regard, the trial court noted that the appropriation established in Act 1102 expired on June 30, 2003, but that Appellant did not file its complaint in the instant action until March 10, 2004. Appellant argues, however, that it submitted proof that this appropriation was extended by Act 1605, until the period ending June 30, 2005. Thus, according to Appellant, the trial court erred in denying its motion for reconsideration on this basis.

Appellee counters that Appellant did not submit such proof until its response to Appellee's reply to the motion for summary judgment and, thus, such evidence was not timely and could not be considered by the court, pursuant to Rule 56(c).

Having determined that the trial court correctly dismissed this cause of action on the basis that Appellant failed to follow the requirements of section 22-4-106, it is not necessary for this court to address the merits of this argument on appeal.

Affirmed.