GREAT LAKES CHEMICAL CORPORATION *v.*
Scott D. BRUNER, in His Official Capacity as Interim Director
of the Arkansas Oil & Gas Commission, Spence A. Leamons, W. Frank
Morledge, Chad White, Mike Davis, Carolyn Pollan, Charles Wohl-
ford, and Bill Poynter, in Their Official Capacities as Duly Appointed
and Acting Commissioners of the Arkansas Oil & Gas Commission;
and W. H. Arnold and Bill Bush, in Their Official Capacities as Duly
Appointed Special Commissioners of the Arkansas Oil & Gas Com-
mission, Appellees; Albemarle Corporation, Cross-Appellant

06-73                                      243 S.W.3d 285

Supreme Court of Arkansas
Opinion delivered November 16, 2006

*Friday, Eldredge & Clark, LLP,* by: *R. Christopher Lawson,* for appellant/cross-appellee, Great Lakes Chemical Corporation.

*Mike Beebe,* Att'y Gen., by: *Thomas S. Gay,* Sr. Ass't Att'y Gen., *Arnold Jochums,* Ass't Att'y Gen., and *Elizabeth Thomas Smith,* Ass't Att'y Gen., for appellees Scott D. Bruner; Spence A. Leamons; W. Frank Morledge; Chad White; Mike Davis; Carolyn Pollan; Charles Wohlford; Bill Poynter, W.H. Arnold, and Bill Bush.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Jim L. Julian*; *Bell Law Firm*, by: *Ronny J. Bell*, for appellee/cross-appellant, Albemarle Corporation.

R OBERT L. BROWN, Justice. This appeal involves a petition for judicial review of an order from the Arkansas Oil and Gas Commission (Commission). The Union County Circuit Court affirmed the order of the Commission, and this appeal followed. We affirm the order of the Commission on direct appeal, and we further affirm the order of the Commission on cross-appeal.

On August 13, 1996, the Commission entered an order, which we will call the West Brine Unit Order in this opinion. That order authorized the unit operation of certain lands in Union County (the West Plant Unit) for the production of brine from the Smackover lime formation. The West Brine Unit Order designated Great Lakes Chemical Corporation as operator of the West Plant Unit and also approved a Brine Unit Operating Agreement (Operating Agreement), which was subsequently executed by both Great Lakes and Albemarle Corporation. Albermarle was the owner of a 16.785% non-operating, working interest in the West Plant Unit. Under the West Brine Unit Order, a percentage of production costs associated with the West Brine Field[1] would be borne solely by the unit operator, Great Lakes.

In 1998, without notice to the Commission or Albemarle, Great Lakes changed its accounting methodology with respect to the assessment of costs for the entire West Brine Field and allocated those field expenses to non-operating unit owners in the West Plant Unit, including Albemarle.[2]

On January 13, 1999, Albemarle notified Great Lakes of its election to begin taking brine through Great Lakes's pipeline

---

[1] According to the Amended Summary Report of Material Changes in Accounting filed with the Commission by Albemarle, the West Brine Unit Order and the Operating Agreement established an operating unit that was not co-extensive with the West Brine Field. Certain assets that were part of the West Brine Field were not made part of the West Plant Unit, such as supply and disposal pipelines and brine processing and transportation facilities.

[2] According to the testimony of Tom Mathis, manager of Great Lakes's National Resources Department, unit owners were not originally charged for any costs associated with the processing or transportation of brine. Their costs were limited to production costs incurred in connection with the wellhead.

system pursuant to the Operating Agreement. The parties then entered into a Brine Balancing Agreement to facilitate Albemarle's taking of brine and to provide a method of balancing the brine production from the West Plant Unit when one party takes more brine or natural gas than that party's proportionate share. Albemarle began taking brine in 2000 and, pursuant to the Brine Balancing Agreement, used pipelines, injection pumps, and disposal wells owned by Great Lakes for the disposal of spent brine.

On November 4, 2002, Albemarle filed an application with the Commission for an order to enforce the cost-allocation terms of the West Brine Unit Order and the Operating Agreement for the West Plant Unit. Albemarle asserted in that application that Great Lakes's 1998 change in accounting methods allocated expenses to non-operating, working interest owners that were not proper expenses under the Operating Agreement, and, thus, this assessment of costs was not in accordance with the West Brine Unit Order. Albemarle's application asked that Great Lakes be directed to discontinue immediately all cost allocations to non-operating, working interest owners that were not in strict compliance with the Operating Agreement. Albemarle's application further asked that failure to comply with the terms of the Operating Agreement and West Brine Unit Order be grounds for removal of Great Lakes as the operator of the West Plant Unit.

On April 12-14, 2004, the Commission held a public hearing on Albemarle's application. Following that hearing, it granted Albemarle's application by order dated September 23, 2004, and directed Great Lakes to return to the accounting procedures agreed to in the Operating Agreement and approved by the Commission in its 1996 order. Prior to the hearing, Great Lakes moved the Commission for partial summary judgment, seeking a determination that Great Lakes be permitted to charge Albemarle for its use of Great Lakes's disposal pipeline system for transporting spent brine. In its 2004 order, the Commission granted that motion and ruled that Great Lakes could charge Albemarle for its proportionate use of the system.

Great Lakes then petitioned the Union County Circuit Court for judicial review of the Commission's decision pursuant to Arkansas Code Annotated § 15-76-321 of the Arkansas Brine Production Act and § 25-15-212 of the Administrative Procedure Act (APA) and sought reversal of the Commission's order granting Albemarle's application. Albemarle cross-petitioned for judicial review and asked for reversal of the Commission's ruling that

allowed Great Lakes to charge Albemarle for its use of the disposal pipeline system to transport spent brine.

In an order entered on September 29, 2005, the circuit court affirmed the Commission's order. In doing so, it ruled that the Commission had subject-matter jurisdiction to decide the cost-assessment dispute and that all findings made by the Commission were supported by substantial evidence. The circuit court also granted a motion filed by the Commission to exclude additional evidence from being filed in that court and limited the evidence it would consider to that contained in the record before the Commission.

## I. Jurisdiction of the Commission

We first address the issue of the Commission's subject-matter jurisdiction to hear Albemarle's petition regarding cost allocation. It is Great Lakes's position that the allocation of field costs to owners in the West Plant Unit involves only the Operating Agreement between Great Lakes and Albemarle, which is a private contract. Accordingly, Great Lakes urges that this contract dispute is more appropriately decided by the circuit court and not by the Commission.

The Brine Production Act gives the Commission jurisdiction and authority over all parties and property necessary to enforce the Act's provisions. See Ark. Code Ann. § 15-76-306(a) (Repl. 1994). Under the Act, it is the Commission that has the authority to enforce brine production unit orders and to enforce the cost and expense allocations of operations incorporated into those orders. See Ark. Code Ann. § 15-76-311(3) and (4) (Repl. 1994). According to the Brine Production Act, brine production unit orders must include a provision describing the costs of the unit, as well as credits, charges, and other expenses involved in the operation and development of the unit and the time and manner in which owners of the unit are responsible for payment. See Ark. Code Ann. § 15-76-311(3), (4), and (5) (Repl. 1994).

In the instant case, the 1996 West Brine Unit Order does not contain a separate provision for costs as required by the Brine Production Act, but rather relies on the Operating Agreement approved and subsequently executed by Albemarle and Great Lakes. This is clear from the terms of the Order itself. In the Order's finding of facts, the Commission states that the Operating Agreement "contains a provision for any credit and charges to be

made in the adjustment among the owners in the unit for both their allocated costs of the total investment in wells, . . . pumps, machinery, materials, and equipment required by such brine production." The Order further concludes that "the creation of such brine production unit by the approval of the [Operating Agreement] . . . together with the exhibits annexed thereto is necessary to prevent waste, to secure the greatest possible economic recovery of brine and the chemical substances contained therein and to protect the correlative rights of all owners and the plan of development and operation thereof is therefore hereby approved." Finally, the Order states that "all owners in such unit who have not otherwise agreed to participate therein by the execution and delivery of a salt water (brine) lease and who may desire to pay their share of the costs . . . and participate in the operations of the unit may elect to do so within sixty (60) days from the effective date hereof by executing the [Operating Agreement] in form identical to that introduced as Exhibit J herein."

Hence, the Operating Agreement was reviewed and approved by the Commission. Had the Operating Agreement not been approved, the West Brine Unit Order could not have been entered. Further, the West Brine Unit Order specifically states that the Commission retains jurisdiction over the parties and subject matter involved to enter any further orders as necessary.

■ Great Lakes cites to several cases from other states for the proposition that an oil and gas commission cannot adjudicate disputes between parties arising from private operating agreements. In particular, it cites to *Leede Oil & Gas, Inc. v. Corporation Commission*, 747 P.2d 294 (Okla. 1987) and *Samson Resources Co. v. Corporation Commission*, 702 P.2d 19 (Okla. 1985), where the Oklahoma Supreme Court held that the Oklahoma Corporation Commission (Oklahoma's equivalent to the Arkansas Oil and Gas Commission) did not have jurisdiction to resolve disputes between parties arising out of private operating agreements.

Both cases, however, are distinguishable from the facts presented here. In those cases, the parties entered into a private agreements separately and distinctly from the Oklahoma Corporation Commission's orders. The Oklahoma Corporation Commission's orders were complete orders within themselves and in no way relied upon the private agreements. In the case before us, the situation is entirely different. The Commission incorporated the Operating Agreement into the West Brine Unit Order. Furthermore, in order to enforce the order regarding cost allocation, the

Commission must have jurisdiction to enforce the Operating Agreement. The two are symbiotic and intertwined. In short, we agree with Albemarle and the Commission that the Operating Agreement was approved by the Commission and incorporated within the West Brine Unit Order and that, as a consequence, it falls within the Commission's statutory bailiwick to decide matters relating to the operation of the brine units, including the enforcement of its order. We hold that the Commission correctly determined that it had subject-matter jurisdiction in this case.

## II. Additional Evidence

Great Lakes next contends that the Brine Production Act sets out a specific procedure for seeking judicial review of a Commission ruling that is a wholly different procedure from that set out in the Administrative Procedure Act. It urges that the procedures set out in the Brine Production Act should control and be followed. It further claims that the Brine Production Act specifically contemplates the introduction of additional evidence before the circuit court on judicial review and that the Brine Production Act stands alone and is not subsumed by the APA. Hence, Great Lakes maintains that the circuit court should have conducted a de novo review of the Commission's decision, which would have involved the introduction of new evidence on the merits of the dispute and erred in not doing so.[3]

The Commission and Albemarle take strong exception to this statutory interpretation in their briefs and contend that the Brine Production Act and APA should be read together and their provisions harmonized. Both maintain that the circuit court properly refused to review the Commission's decision de novo. They bolster their contention by advocating that if the circuit court had conducted a de novo review of the case and permitted the introduction of new evidence, the separation-of-powers doctrine would have been violated because the circuit court would have impinged on the authority of the executive branch of government to interpret and enforce its own rules.[4]

---

[3] The three new witnesses Great Lakes sought to have testify before the circuit court were Frederick Flyer, an economics expert; Howard Blunk, an expert in oil and gas accounting; and Tom Daily, a fact witness on the history of the West Plant Unit.

[4] While in matters of judicial review, this court reviews the decision of the agency or commission and not that of the circuit court, see, e.g., Kale v. Arkansas State Med. Bd., 367

This court has often stated its standard of review for determining what a statute means:

> The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005); *Arkansas Tobacco Control Bd. v. Santa Fe Natural Tobacco Co., Inc.*, 360 Ark. 32, 199 S.W.3d 656 (2004). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*

*Dep't of Human Servs. & Child Welfare Agency Review Bd. v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006). We have further held that statutes relating to the same subject matter should be read in a harmonious manner, if possible. *See Ark. Dep't of Parks & Tourism v. Jeske*, 365 Ark. 279, 229 S.W.3d 23 (2006).

Great Lakes strongly contends that the Brine Production Act is more specific to this case than the APA regarding judicial review and that it specifically contemplates new evidence being introduced before the circuit court. The relevant section of the Brine Production Act reads:

> (a) Any interested person adversely affected by any provisions of this subchapter or by any rule, regulation, or order made by the commission hereunder, . . . may obtain court review and seek relief by a suit . . . in the chancery court of the county in which the property involved is located.
>
> . . . .
>
> (c) In the trial, the burden of proof shall be upon the plaintiff, *and all pertinent evidence with respect to the validity and reasonableness of the order of the commission complained of shall be admissible.*
>
> . . . .

---

Ark. 151, 238 S.W.3d 89 (2006), in the instant case, the procedure for judicial review by the circuit court is an issue which must be resolved by this court. Hence, we address this issue.

(e) The right of review accorded by this section shall be inclusive of all other remedies, but the right of appeal shall lie as hereinafter set forth.

Ark. Code Ann. § 15-76-321 (Repl. 1994) (emphasis added).

Great Lakes further claims that § 15-76-321(c) controls in this case over the relevant section of the APA, which reads:

(g) The review shall be conducted by the court without a jury *and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency not shown in the record, testimony may be taken before the court.* The court shall, upon request, hear oral argument and receive written briefs.

Ark. Code Ann. § 25-15-212(g) (Repl. 2002) (emphasis added).

We do not reach the issue of whether the Brine Production Act controls this matter, because we conclude that the two statutes can be read harmoniously. As already noted, this court has held that seemingly conflicting statutes should be read in a harmonious manner where possible. *See Ark. Dep't of Parks & Tourism v. Jeske, supra.* In this regard, statutory provisions are to be reconciled to make them consistent, harmonious, and sensible, and effect is to be given to every part of the statute. *See id.*

■ Reading the Brine Production Act harmoniously with the APA, it appears the correct procedure for the circuit court to follow is to limit its review to the record and allow the parties to introduce evidence only for the purpose of showing the Commission's order was invalid or unreasonable, which we interpret to mean either procedural irregularities that occurred before the Commission or situations where there was good reason for not presenting the evidence to the Commission. Great Lakes made neither showing with respect to the new evidence it sought to introduce before the circuit court.

There is a second reason that we oppose Great Lakes's interpretation of the Brine Production Act. Review of state agency decisions is allowed only under narrow circumstances. *See* Ark. Code Ann. § 25-15-212(h) (Repl. 2002); *Tomerlin v. Nickolich,* 342 Ark. 325, 27 S.W.3d 746 (2000). If the interests of the parties depend on the executive or legislative wisdom of the agency, *de novo* review is inappropriate, and this court has said that the doctrine of separation of powers allows the judiciary only a very limited review of those matters. *See Tomerlin v. Nickolich, supra.*

██ If possible, this court construes statutes to be constitutional. *Shipley, Inc. v. Long,* 359 Ark. 208, 195 S.W.3d 911 (2004). Accordingly, we construe the Brine Production Act not to allow a *de novo* review of the Commission's order as urged by Great Lakes. The Brine Production Act allows only a review of the record and permits additional evidence under the limited circumstances that the evidence can prove the Commission's order was invalid or unreasonable, which again, we interpret to mean evidence relating to procedural irregularities before the Commission or where there was good reason for failure to present that evidence to the Commission. This procedure for review is not unconstitutional.[5]

██ In holding as we do, we are aware of our decision in *Williams v. Arkansas Oil & Gas Commission,* 307 Ark. 99, 817 S.W.2d 863 (1991), where this court endorsed admission of additional evidence in circuit court for judicial review under identical language contained in the Oil & Gas Production and Conservation Act. *See specifically* Ark. Code Ann. § 15-72-106(a) and (c) (Repl. 1994). We observe that in that case, neither the constitutional argument concerning *de novo* review nor the APA statute regarding judicial review were raised and discussed by this court. That clearly distinguishes the *Williams* case from the case at hand. To the extent that *Williams v. Arkansas Oil & Gas Commission, supra,* conflicts with this case, we overrule it.

### III. Substantial Evidence of Order Violation

Great Lakes next claims that there is no plausible reading of the West Brine Unit Order that would authorize the Commission to direct Great Lakes to return to the original accounting methodology contemplated in 1996 or to conclude that it had violated the order by unilaterally changing accounting procedures. Great Lakes asserts that its representation of costs to the Commission at the time of violation of the order were only estimates and that it should not now be bound to follow those estimates strictly. In sum, it contends that the circuit court's conclusion that substantial

---

[5] Though not argued by the parties, we further note that the Brine Production Act was enacted by Act 937 of 1979, which was subsequent to the APA, which was enacted by Act 434 of 1967. An amendment to the APA, however, was enacted by Act 1149 of 1997, and that amendment excluded other commissions from APA requirements for judicial review but not the Oil & Gas Commission. This confirms that the Arkansas General Assembly did not intend to remove the Oil & Gas Commission from the dictates of the APA.

evidence supports the Commission's opinion that Great Lakes violated the West Brine Unit Order is in error.

█ We first emphasize that Great Lakes admits it unilaterally changed accounting procedures in 1998. It further admits that it made this change without seeking permission from the Commission or Albemarle. At the hearing before the Commission in April 2004, Albemarle introduced a summary report of material changes in the accounting methodology by Great Lakes, which resulted in a drastic increase in costs to unit owners in the West Plant Unit after Great Lakes changed its accounting procedures. Taken together, the West Brine Unit Order, the Operating Agreement requiring a certain accounting methodology, and Great Lakes's admission to deviating from this methodology, as well as the summary report showing that Great Lakes's new methodology results in higher costs assessed against Albemarle than previously contemplated under the West Brine Unit Order, confirm that there is substantial evidence of a violation. We affirm the Commission on this point.

## IV. Cross-Appeal

Albemarle contends on cross-appeal that the Commission should not have granted Great Lakes's motion for summary judgment where Great Lakes asked the Commission to approve charging Albemarle for its use of Great Lakes's disposal pipelines. By ruling as it did, Albermarle asserts that the Commission allowed Great Lakes to bill Albemarle twice for the same pipelines because Great Lakes has continued to charge Albemarle for the capital expenses associated with the pipelines, as it did before the Commission's proceeding, and is now additionally charging for its use of the disposed pipelines.

Albemarle argues, in addition, that the Commission's 2004 order directing Great Lakes to return to the original accounting methodology supersedes the Commission's conclusion that Great Lakes may now charge Albemarle for its use of the disposal pipeline system. Albemarle further contends that the Commission's grant of summary judgment was improper because material questions of fact exist as to whether Albemarle was already paying for its use of the system.

█ We observe, as an initial matter, that Albemarle's argument that summary judgment should not have been granted because material questions of fact remained to be resolved cannot

be considered by this court because the argument was not raised to the Commission. It is axiomatic that issues such as this must first be raised to the Commission in order to preserve the issue for appeal. *See, e.g., City of Benton v. Ark. Soil & Water Conservation Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). Albemarle made only a legal argument before the Commission based on the Operating Agreement that it should not be charged for the extra use of the pipelines. It did not raise the issue of whether material questions of fact remained for the Commission to decide. Therefore, this issue will not be addressed by this court.

Albemarle's second argument to this court under its cross-appeal is that the provisions of the final order should be read together, or, in the alternative, the provision directing Great Lakes to return to the original accounting methodology (Order, paragraph 2) supersedes the provision allowing Great Lakes to charge Albemarle for use of the pipelines (Conclusion, paragraph 2).

■ We conclude that the language in the final order is clear and that the provisions in question do not contradict or supersede each other. The final order allows Great Lakes to charge Albemarle for its proportionate use of the disposal pipeline system for the transportation of brine to the disposal well. It also instructs Great Lakes to return to the original accounting procedures approved by the Commission and agreed upon in the Operating Agreement. These are separate and disparate issues, which the 2004 Order resolves. There is substantial evidence to support the Commission's decision, and the final order should be affirmed.

Commission affirmed on direct appeal.

Commission affirmed on cross-appeal.