2010 Ark. 221

**HEMPSTEAD COUNTY HUNTING CLUB, INC., Schultz Family Management Company, Po–Boy Land Company, Inc., and Yellow Creek Corporation, Appellants,**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION, Southwestern Electric Power Company, and American Electric Power Company, Appellees.**

No. 09–718.

Supreme Court of Arkansas.

May 13, 2010.

Lawrence Edwin Chisenhall, Jr., Charles Robert Nestrud, James H. Akins, Jr., James E. Smith, Jr., Little Rock, Frederick W. Addison, Dallas, TX, Damon Young, Texarkana, TX, for appellants.

Susan Boone D'auteuil, Lori L. Burrows, Stephen Kevin Cuffman, David R. Matthews, Kelly Murphy McQueen, Derrick W. Smith, T. Ark Monroe, III, Scott C. Trotter, Tucker Raney, N.M. Norton, Little Rock, for appellees.

JIM HANNAH, Chief Justice.

⎯|₁Appellants Hempstead County Hunting Club, Inc.; Schultz Family Management Company; Po–Boy Land Company, Inc.; and Yellow Creek Corporation appeal the Arkansas Public Service Commission's grant of a Certificate of Environmental Compatibility and Public Need (CECPN) to Southwestern Electric Power Company (SWEPCO) for the construction, maintenance, and operation of an ultra-

supercritical coal-fired baseload electric generation facility in Hempstead County, Arkansas (the Turk Plant). Appellants first appealed the Commission's decision to the Arkansas Court of Appeals, which reversed the grant of the CECPN application to build the Turk Plant. *See Hempstead County Hunting Club, Inc. v. Ark. Pub. Serv. Comm'n,* 2009 Ark. App. 511, 324 S.W.3d 697. Subsequently, we granted appellees' petition for review of the court of appeals's decision. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *E.g., Duke v. Shinpaugh,* 375 Ark. 358, 290 S.W.3d 591 (2009).

Appellants first assert that the Commission erred by failing to comply with the requirements of the CECPN law. Specifically, appellants contend that the Commission erred by failing to resolve all matters in a single proceeding as required by Arkansas Code Annotated section 23–18–502 (Repl.2002); by resolving the basis of the need for the facility in a separate non-CECPN proceeding; and by failing to address the alternatives in the manner required by the CECPN law. Next, appellants contend that, in making its decision, the Commission failed to resolve conflicts in the testimony. Additionally, appellants contend that the Commission's decision was arbitrary and not supported by substantial evidence. We reverse and remand the decision of the Commission.

The facts giving rise to the instant appeal are as follows. On January 26, 2006, SWEPCO, a wholly owned subsidiary of American Electric Power Company, Inc.

(AEP), filed an application with the Commission requesting an order declaring that SWEPCO had demonstrated a need to acquire new power supply resources. SWEPCO's application described its need for short-term and long-term capacity. The long-term resources consisted of three components: up to 500 megawatts (MW) of peaking capacity starting no later than June 1,2008; up to 500 MW of intermediate capacity starting no later than June 1, 2010; and up to 600 MW of additional baseload capacity starting no later than June 1, 2011. The Commission established Docket Number 06–024–U (the Needs Docket) to address SWEPCO's request. This docket was a separate proceeding from the docket in this appeal, Docket Number 06–154–U, and the only parties that participated in the Needs Docket were SWEPCO and the General Staff of the Commission. On June 9, 2006, the Commission entered Order Number 3, in which it found that SWEPCO had demonstrated a need for additional power supply resources and granted its application.[1] The Commission also found that nothing in the order represented a finding regarding any specific proposals SWEPCO might proffer to address its need for additional power supply resources. Thereafter, SWEPCO filed three separate applications pursuant to the Utility Facility and Economic Protection Act, Arkansas Code Annotated sections 23–18–501 to –530 (Repl. 2002 & Supp.2007) (Utility Act), to obtain CECPNs from the Commission to satisfy its long-term needs:

1. Docket Number 06–100–U, filed with the Commission on July 20,

---

1. The Commission had previously scheduled a public hearing for June 13, 2006. On May 25, 2006, SWEPCO and the Commission Staff filed a joint motion to cancel the hearing and for expedited ruling, asserting that there were no remaining outside issues between Commission Staff and SWEPCO and that SWEPCO had no need to file rebuttal testimony. The joint motion stated that no other parties had intervened and that it was unlikely "the public hearing ... would produce any additional, relevant information." The Commission granted the joint motion in Order Number 3.

2006, concerned SWEPCO's proposal to build a natural gas-fired peaking facility, which would generate 332 MW of summer peaking capacity, in Washington County, Arkansas (the Tontitown Plant).

2. Docket Number 06–120–U, filed with the Commission on September 1, 2006, concerned SWEPCO's proposal to build a natural gas-fired combined cycle intermediate generating facility of 500 MW in Shreveport, Louisiana, which would be located at SWEPCO's existing Arsenal Hill Power Plant site.

3. Docket Number 06–154–U, filed with the Commission on December 8, 2006, which is the docket involved in this appeal. Here, SWEPCO requested a CECPN to build a coal-fired baseload facility, designed to generate approximately 600 MW of net generating capacity in Hempstead County, Arkansas (the Turk Plant). The proposed baseload facility would consist of a single pulverized coal, ultra-supercritical steam generator to be fueled by bituminous coal from the southern Powder River Basin in Wyoming.

After SWEPCO filed its application in this docket, the Staff filed a letter that notified certain state offices or agencies of SWEPCO's application,[2] noted that the application was available for inspection, and invited comments as to the adequacy of SWEPCO's statements. Appellants were

not included in this mailing; however, between December 28 and January 4, separate appellants filed motions to intervene. SWEPCO objected to their intervention, but in Order Number 2, the Commission granted appellants' intervention requests "on the condition that these entities intervene and participate in this proceeding as a single and united interest represented by common legal counsel." Thereafter, appellants participated in the application process through prefiling testimony, cross-examining adverse witnesses, submitting exhibits for Commission review, and filing motions and other pleadings. Witnesses either filed testimony and exhibits or presented testimony at the evidentiary hearing before the Commission. After the hearing, the Commission and parties visited an existing SWEPCO coal-fired baseload generating plant in Northwest Arkansas (the Flint Creek Plant), the proposed site of the Turk Plant in Hempstead County, and appellants' private properties around the Turk Plant site. The parties then filed proposed findings of fact and conclusions of law, as well as briefs in support of their positions. On November 21, 2007, the Commission entered Order Number 11.

Order Number 11 granted SWEPCO the CECPN it needed to move forward with its plan to build the Turk Plant, subject to twelve conditions. Commission Chairman Paul Suskie joined in the order with Commissioner Daryl Bassett, but he also filed a separate concurring opinion, which Commissioner Bassett joined, ex-

---

**2.** The letter was sent in compliance with Arkansas Code Annotated sections 23–18–513 and 23–18–514 (Repl.2002). The following agencies and offices were included on the mailing list: Attorney General's Office; Arkansas Commissioner of State Lands; Arkansas Waterways Commission; Arkansas Geological Commission; Arkansas Natural Resources Commission; Arkansas Energy Office; Arkansas Game and Fish Commission; Arkansas Forestry Commission; Arkansas Department of Environmental Quality; Department of Arkansas Heritage; Arkansas Highway & Transportation Department; Arkansas Department of Health and Human Services; Arkansas Department of Finance and Administration; Arkansas Department of Economic Development; Arkansas Department of Aeronautics; and the Governor's Office.

pressing concerns over the continued use of coal-generated electricity. Special Commissioner David Newbern filed a dissenting opinion. Subsequently, appellants filed their application for rehearing of Order Number 11, pursuant to Arkansas Code Annotated sections 23–2–422 and 23–18–524(a) (Repl.2002). SWEPCO filed a motion requesting clarification of some of the conditions the Commission had set in Order Number 11.

Order Number 13, filed December 31, 2007, amended several conditions of Order Number 11, as requested by SWEPCO and appellants, but otherwise denied appellants' rehearing petition. Special Commissioner David Newbern again dissented. Appellants now bring this appeal of Order Number 11.

### Motion to Dismiss Appeal

■ As a preliminary matter, we must address SWEPCO's motion to dismiss this appeal.[3] Appellants appealed from Order Number 11, but SWEPCO claims that Order Number 11 is not a final, appealable order. Rather, SWEPCO contends that section 23–18–524 of the Utility Act requires an appeal to be taken of the Commission's final decision on rehearing—in this case, Order Number 13. SWEPCO states that, by failing to appeal Order Number 13, appellants have not challenged the final Turk Plant CECPN and, therefore, this is not a proper appeal. Appellants respond that SWEPCO misinterprets section 23–18–524. They contend that, when read together, section 23–18–524 and section 23–2–423 (Repl.2002) permit the appeal of Order Number 11.

■ The basic rule of statutory construction is to give effect to the intent of the legislature. *Great Lakes Chem. Corp. v. Bruner,* 368 Ark. 74, 243 S.W.3d 285 (2006). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.* We have further held that statutes relating to the same subject matter should be read in a harmonious manner, if possible. *Id.*

Section 23–2–423, the general statute governing appeals of decisions of the Commission, provides in relevant part:

(a)(1) Any party to a proceeding before the Arkansas Public Service Commission aggrieved by an order issued by the commission in the proceeding may obtain a review of the order in the Arkansas Court of Appeals. The review of the order may be had by filing in that court, within thirty (30) days after the order of the commission upon the application for rehearing or within thirty (30) days from the date the application is deemed to be denied as provided in § 23–2–422, a notice of appeal stating the nature of the proceeding before the commission, identifying the order complained of and the reasons why the order is claimed to be unlawful, and praying that the order of the commission be modified, remanded, or set aside in whole or in part.

(2) No proceeding to review any order of the commission shall be brought by any party unless that party has made application to the commission for a rehearing on the order.

Section 23–18–524, which governs judicial review of Commission decisions issued

3. The Commission responded and requested that we grant SWEPCO's motion.

on CECPN applications, provides as follows:

(a) Any party aggrieved by any decision issued on an application for a certificate may apply for a rehearing as provided in §§ 23–2–401 and 23–2–421–23–2–424.

(b) Any party aggrieved by the final decision of the Arkansas Public Service Commission on rehearing may obtain judicial review thereof in accordance with the provisions of §§ 23–2–401 and 23–2–421–23–2–424.

We are not persuaded by SWEPCO's argument that, to perfect an appeal from the Commission's decision to grant SWEPCO's application for certificate, appellants were required to appeal from the Commission's final decision on rehearing, Order Number 13. Neither section 23–2–423 nor section 23–18–524 contains the limitation that the final order on rehearing must be appealed as a prerequisite to pursue an appeal of the order by which a party was aggrieved. Here, appellants were aggrieved by Order Number 11. As required by section 23–2–423, appellants timely filed a notice of appeal and a petition for rehearing. The Commission heard appellants' petition for rehearing and denied the petition in Order Number 13. Pursuant to section 23–2–423, any party aggrieved by Order Number 13, in this case, either appellants or SWEPCO, certainly had the right to pursue judicial review of that order. But nothing in section 23–2–423 required appellants to appeal Order Number 13 to obtain judicial review of Order Number 11. Accordingly, we deny SWEPCO's motion to dismiss and turn to appellants' points on appeal.

### Single Proceeding

Appellants assert that, pursuant to Arkansas Code Annotated section 23–18–502(e) (Repl.2002), the Commission was required in a "single proceeding" to resolve all matters relating to the Turk Plant, including the need for the plant, construction and financing of the plant, and construction and financing of the electric transmission lines required for the plant. The Commission asserts that the CECPN law does not require combining the issues of need, the power plant, and its associated transmission lines into one CECPN proceeding. SWEPCO asserts that the General Assembly's use of "all matters" and "single proceeding" in section 23–18–502(e) means that the "review of a single, major utility facility, such as a generating plant, should be in a single forum before the [Commission]."

We have previously stated the standard of review for statutory interpretation. See Bruner, supra. We add that the interpretation placed on a statute or regulation by any agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. Northport Health Servs. of Ark. LLC v. Ark. Dep't of Human Servs., 2009 Ark. 619, 363 S.W.3d 308.

Section 23–18–502(e) provides as follows: The General Assembly, therefore, declares that it shall be the purpose of this subchapter to provide a forum with exclusive and final jurisdiction, except as provided in §§ 23–18–505 and 23–18–506, for the expeditious resolution of all matters concerning the location, financing, construction, and operation of electric generating plants and electric and gas transmission lines and associated facilities in a single proceeding to which access will be open to individuals, groups, state and regional agencies, local governments, and other public bodies to enable them to participate in these decisions. These matters presently under the jurisdiction of multiple state, region-

al, and local agencies are declared to be of statewide interest.

In construing the meaning of "single proceeding," we find instructive the last sentence of section 23–18–502(e). There, the General Assembly noted that, at the time the statute was enacted, matters relating to the location, financing, construction, and operation of utility facilities were subject "to the jurisdiction of multiple state, regional, and local agencies." Ark. Code Ann. § 23–18–502(e). Thus, the intent of section 23–18–502(e) was to confine jurisdiction over approval of major utility facility issues, with noted exceptions, to the Commission.[4] Consistent with this conclusion, Arkansas Code Annotated section 23–18–526 (Repl.2002) prohibits local governments and other state agencies from exercising jurisdiction except as permitted in the Utility Act.

As used in section 23–18–502(e), "single proceeding" means that exclusive jurisdiction to hear issues related to location, financing, construction, and operation of major utility facilities, aside from the noted exceptions, lies before the Commission. Stated another way, a party seeking governmental sanction of a major utility facility pursuant to the Utility Act may do so before the Commission and need not submit to proceedings before multiple agencies. In sum, we find no merit in appellants' contention that, pursuant to Arkansas Code Annotated section 23–18–502(e), the Commission was required in a "single proceeding" to resolve all matters relating to the Turk Plant, including the need for the plant, construction and financing of the plant, and construction and financing of the electric transmission lines required for the plant. Still, while section 23–18–502(e) is not controlling, we must deter-mine whether, pursuant to other provisions in the Utility Act, the Commission erred in failing to consider all of those matters in one proceeding.

Here, construction and financing of the Turk Plant was considered in Docket Number 06–154–U, while need was considered separately in a non-CECPN proceeding in the Needs Docket. While there was some evidence about electric transmission lines during the hearing on Docket Number 06–154–U, the Commission did not grant a CECPN for the lines in that docket. Relying on the dissenting Commissioner's opinion that in "[b]y separating the issues of (1) need, (2) construction and financing, and (3) transmission line construction and location into three separate dockets, the clear intent of the General Assembly is subverted," appellants assert that the Commission must be reversed because it failed to consider all matters in one proceeding.

█ Utility regulation does not arise from the common law but rather is a creature of statute. As such, the statutes must be strictly construed, and nothing may be taken that is not clearly expressed. *E.g.*, *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 348 Ark. 197, 204, 73 S.W.3d 584, 588 (2002). First, we must consider whether, as appellants assert, the Commission was required in one proceeding to resolve all issues relating to both the Turk Plant and the transmission lines that would be needed to convey the power produced by the plant. The Utility Act statutes refer to "any major utility facility," "a major utility facility," and "the major utility facility" in the singular form as opposed to the plural form. *See, e.g.*, Arkansas Code Annotated sections 23–18–508 (Repl.2002), 23–18–510 (Repl.

---

4.  The exceptions are found in Arkansas Code Annotated sections 23–18–505 and 23–18–506 (Repl.2002), neither of which is relevant to the issues on appeal.

2002), and 23–18–511 (Supp.2007). Further, Arkansas Code Annotated section 23–18–503(5) defines in separate paragraphs "major utility facility" to mean an "electrical generating plant," an "electric transmission line," or a "gas transmission line." If there were a requirement to consider more than one facility together in one proceeding, as in the present case of a power plant and transmission lines, then the singular form of "facility" would not be used. Looking to the plain meaning of the statute, we conclude that, because the Turk Plant is a major utility facility, the Commission was permitted to consider it alone in one proceeding. Electric transmission lines, also a major utility facility, may be considered in a separate proceeding. We now turn to appellants' argument that the Commission erred by making a need determination in a separate docket.

■ Appellants argue that the Commission erred by resolving the need for the Turk Plant in the separate Needs Docket because under the Utility Act, need must be determined in the CECPN proceeding. The Commission responds that it did, in fact, resolve the question of whether the Turk Plant was needed in this case, not in the Needs Docket. Further, the Commission states that the Needs Docket was a "routine" proceeding about resource planning, not the Turk Plant.

■ In questions pertaining to the regular pursuit of the Commission's authority, the |13courts do have the power and duty to direct the Commission in the performance of its functions insofar as it may be necessary to assure compliance by it with the statutes and constitutions. *Southwestern Bell Tel. Co. v. Ark. Pub. Serv. Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). In fulfilling this duty, we recognize that the Commission is a creature of the General Assembly, and its power and authority is limited to that which the legislature con-

fers upon it. *See Ark. County v. Desha County*, 342 Ark. 135, 27 S.W.3d 379 (2000). The General Assembly in section 23–18–502(a) noted that there would be a growing need for public utility services and that a purpose of the Utility Act was to facilitate and oversee those services. Ark. Code Ann. § 23–18–502(c). But in this case, the question of whether SWEPCO needed additional power was resolved outside the Utility Act.

On January 26, 2006, SWEPCO filed its application for findings by the Commission that SWEPCO had a need for acquisition of additional power. There, SWEPCO stated that the application for need was made as a predicate to obtaining required certificates, including a CECPN under the Utility Act. SWEPCO also stated in its application that it filed the application "in the spirit" of code requirements and cited Arkansas Code Annotated sections 23–18–104, 23–3–201 (Supp.2005), and 23–18–510 (Repl.2002).

Section 23–18–104 concerns obtaining approval before construction of power generating facilities outside the state. Section 23–3–201 provides that no new construction or operation of equipment or facilities for supplying a public service may be undertaken |14without obtaining a CECPN. Finally, section 23–18–510 concerns issuance of a CECPN under the Utility Act None of these statutes provide authority for the proceeding SWEPCO initiated in the Needs Docket. Neither SWEPCO nor the Commission has provided, nor have we found, any statutory basis for the proceeding undertaken in the Needs Docket.

Because we find no statutory basis for the proceeding in the Needs Docket, we conclude that the Commission did not regularly pursue its authority when it conducted the separate Needs Docket It is clear that, under the Utility Act, there must be a determination of the need for

additional power in the proceeding concerning the major utility facility at issue. Determining need for additional power is integral to determining the basis for the need of the proposed facility.

Moreover, pursuant to section 23–18–502(e), the proceedings before the Commission are provided to assure that "access will be open to individuals, groups, state and regional agencies, local governments, and other public bodies to enable them to participate in these decisions." The proceeding in the Needs Docket failed to provide the requisite opportunity for participation.[5] The Commission erred in deferring to the finding made in that docket.

We hold that the Commission erred in determining the need for additional power in a separate proceeding. Accordingly, we reverse the Commission's CECPN for the construction of the Turk Plant We reiterate that electric transmission lines, also a major utility facility, may be considered in a separate proceeding.

Commission reversed and remanded; court of appeals affirmed as modified; motion to dismiss denied.

Special Justice WHIT FOWLKES join in this opinion.

BROWN, J., and Special Justice DANYELLE WALKER concur.

GUNTER and DANIELSON, JJ., not participating.

ROBERT L. BROWN, Justice, concurring.

I agree with the majority opinion in every respect and write only to expand on what I believe is required in a decision by the Arkansas Public Service Commission ("PSC") regarding "an acceptable adverse environmental impact" in order to grant SWEPCO's application for a Certificate of Environmental Compatibility and Public Need.

The PSC has concluded by a vote of two to one, based on the record before it, that a coal-fired generating plant in Hempstead County "represents an *acceptable* adverse environmental impact." That is a finding and determination that the PSC must make in its order under the Utility Code to grant the certificate to SWEPCO. Ark. Code Ann. § 23–18–519(b)(4) (Repl.2002). In making this mandated finding and determination of an acceptable adverse environmental impact, the statute directs that the PSC must consider, among "other pertinent considerations," the following:

a) the state of available technology;

b) the requirements of the customers of the applicant utility service;

c) the nature and economics of the proposal; and

d) the various alternatives.

Hence, a decision by the PSC in SWEPCO's favor based on these factors is essential for there to be an acceptable adverse environmental impact.

It is undisputed that there will be an adverse environmental impact from the Turk plant.[1] In fact, the General Assem-

---

5. We find no merit in the Commission's assertion that, because all of the Needs Docket filings were available in real time on the Commission's website, appellants had notice of the proceeding but chose not to participate.

1. For example, when operation of the plant begins, estimates are that two to three trains will arrive a week from Wyoming with each train transporting 150 coal-laden cars. That adds up to hundreds of thousands of coal cars over the next thirty years and more than three million tons of coal delivered to the plant each year. Also, carbon dioxide emissions from the plant are placed at over five million tons a year, and 346 pounds of mercury will be released from the coal each year. Significant nitrogen oxide and sulfur oxide emis-

bly has acknowledged that "there is at present and will continue to be a growing need for electric and gas public utility services which will require the construction of major new facilities," which "cannot be built without affecting in some way the physical environment where such facilities are located." Ark.Code Ann. § 23–18–502(a) (Repl.2002). The question is whether the adverse impact is acceptable.

After my analysis of the record and the PSC order regarding these required factors, I conclude that substantial evidence does not support a finding and determination in SWEPCO's favor so as to render the adverse environmental impact acceptable. In order to affirm the Commission's order, this court must find that substantial evidence supports the APSC's findings on these statutory factors. *Id.* § 23–2–423(c)(3). We define substantial evidence as evidence that a reasonable mind would accept as sufficient to support a conclusion and force the mind beyond speculation and conjecture. *See, e.g., Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n,* 342 Ark. 591, 29 S.W.3d 730 (2000). I turn then to the specific factors.

### a. State of Available Technology

Two of the three PSC commissioners concluded: "In summary, the Commission finds that coal-fired generation using ultra-super critical pulverized coal technology is a reasonable solution to the baseload electricity needs of SWEPCO's customers." The third commissioner dissented on this point.

The problem with the ultra-super critical pulverized coal technology upon which the PSC bets all its chips to render the adverse environmental impact acceptable is that it has not been successfully tested or used in the United States, which renders the Turk plant something of a guinea pig for this technology. There was testimony that it has recently been used in Japan but that prior attempts to use it in the United States failed due to metal-fatigue problems. To me, that is problematic.

Because of this, I cannot say the technology prong is supported by substantial evidence. The simple answer is we do not know whether the ultra-super critical pulverized coal technology will work at the Turk plant. It is described as state of the art, but without sufficient testing and usage, that is completely speculative.

### b. Requirements of SWEPCO Customers for Utility Service

As discussed in full in the majority opinion, the need for additional utility service was predetermined under a separate "Needs Docket" proceeding in 2005 and 2006. The record in that Docket was not made a part of the record in this case. According to the two-person majority, which approved the Turk certificate, need for an additional power supply was demonstrated in this prior, nonpublic proceeding. Hence, it was in this previous proceeding that the requirements of SWEPCO customers for this utility service was also decided. The fact that this was predetermined in a separate session between SWEPCO and the PSC staff fails to satisfy the statutory mandate that customer need be determined by the PSC on the record. Ark.Code Ann. § 23–18–519(a) (Supp. 2009). As a result, substantial evidence supporting this requirement was also unmet.

### c. Nature and Economics of the Proposal

One frightening aspect of the Turk plant is its eventual cost. Although no one seri-

sions will further impact the local environ- ment.

ously maintains that the original cost estimate of $1.334 billion made in 2005 is close to what the cost will ultimately be, the PSC's order used the original estimate. Contrary to that estimate, these facts seemed to be accepted by the parties:

- At the PSC hearing on September 7, 2007, SWEPCO CEO, Venita McCellon–Allen, testified that cost would be no less than $1.754 billion. That was three years ago.

- In addition to the $1.754 cost estimate, congressional and administrative regulation of carbon dioxide generated by the Turk plant are estimated to cost hundreds of millions of dollars more, according to PSC expert David Schlissel.

PSC Chairman Paul Suskie and Commissioner Bassett seemed influenced in their decision by potential volatility in natural gas prices and diversification of fuel sources. What is largely undisputed, however, as already mentioned, is that the imminent regulation of carbon dioxide will cause the cost of the coal-fired plant to soar. The price tab, as noted, could quickly reach $3 billion and more. Yet, the PSC used the 2005 estimate in its analysis, which is an unrealistic figure.

### d. Various Alternatives

The viable alternative to coal as a fuel source is natural gas. Chairman Suskie and Commissioner Bassett admitted in their concurring opinion that whether a coal-fired plant is a better economic choice than a gas-fired plant is "unclear." Their opinion added that "no clear winner" emerges as between coal and gas when comparing the cost of the two fuels. They then concluded that because of unknown costs associated with carbon dioxide regulation and "close future cost differences between coal and natural gas," SWEPCO's choice of coal is "economically reasonable." That conclusion seems arbitrary.

What we do know is that the emission of carbon dioxide from natural gas is appreciably lower (some 40% lower) than from coal, which, again, means regulating costs for coal will be significantly higher than those associated with natural gas. That is just one example of the environmental superiority of natural gas over coal. The PSC's conclusion that the Turk plant represents an acceptable adverse environmental impact is highly suspect when it is undisputed that natural gas would result in significantly less carbon dioxide emissions as well as less mercury emissions.

The issue of alternative sites is also problematic. The American Electric Power Corporation (AEPC), SWEPCO's parent company, hired consultants to locate desirable sites for the new plant. Sites were investigated in Oklahoma, Louisiana, Texas, and Arkansas. The consultants ranked the eventual Turk site in Hempstead County ninth as far as desirability out of a list of twelve. Its proximity to Caney Creek Wilderness, a Class I federal land management area, presumably was one reason for the low ranking, especially because AEPC told the consultants it was a "must" that the site be at least 100 kilometers from any federal Class 1 area. The Caney Creek Wilderness area, however, is 90 kilometers from the proposed Turk site. Other examples of the ecological impact to surrounding lakes, wetlands, and habitat were presented by the appellants.

Two reasons were given by SWEPCO for why the Hempstead County site was selected: (1) a single landowner was involved who was willing to sell; and (2) an abundance of water for boilers was available. While these may be legitimate business reasons for SWEPCO to want to build at the proposed site, the PSC was

required to consider various alternatives in determining that the adverse environmental impact was acceptable. And yet, an analysis of particular alternative sites is lacking in the PSC order. The PSC's ultimate finding of an acceptable adverse environmental impact also seems arbitrary where the PSC fails to fully consider and analyze the pros and cons of alternative sites in its order.

### e. Deference

At one point during the oral argument of this matter, counsel for SWEPCO allowed that this court should not substitute its judgment for the PSC's on certificate approval for the Turk plant. Counsel further opined that the PSC should not substitute its judgment for SWEPCO's on the need and environmental impact of the Turk plant. The touchstone for SWEPCO counsel was "reasonableness." Clearly, though, this court has a duty to review the findings and conclusions of the PSC, and, similarly, the PSC, as an arm of the legislature, has a duty to regulate and approve new plant construction under the statutory criteria.

This court does not substitute its judgment for the PSC by concluding that substantial evidence does not support a finding and determination by the PSC that the adverse environmental impact is acceptable based on the necessary statutory criteria. Ark.Code Ann. § 23–2–423(c)(3) (Repl.2002). Our task is to examine and decide whether SWEPCO met its burden of proof before the PSC or, on the other hand, whether the evidence presented was merely speculative and objectively unreasonable.

To summarize, the technology for the Turk plant is untested, the ultimate cost of the plant is considerably higher from original 2005 estimates and an unknown, customer need was determined in a non-public arena, analysis of alternative sites has been given short shrift in the PSC's order, and the preference given to coal over natural gas seems arbitrary in light of cost and the higher toxic emissions associated with coal. I conclude that the burden of substantial evidence has not been met based on these criteria so as to render the adverse impact acceptable, and for that reason, I would also deny the certificate for these additional reasons.

Special Justice DANYELLE J. WALKER *joins this concurring opinion.*