2009 Ark. 619

**NORTHPORT HEALTH SERVICES
OF ARKANSAS, LLC,**
Appellant,

v.

**ARKANSAS DEPARTMENT OF
HUMAN SERVICES,**
Appellee.

No. 09–343.

Supreme Court of Arkansas.

Dec. 10, 2009.

Kutak Rock LLP, by: Debby Thetford Nye, Heather L. Schmiegelow, and Brandon J. Massey, Little Rock, for appellant Northport Health Services of Arkansas, L.L.C.

Richard N. Rosen, Office of Chief Counsel, Little Rock, for appellee.

DONALD L. CORBIN, Justice.

Appellant, Northport Health Services of Arkansas, LLC (Northport), appeals a judgment of the Pulaski County Circuit Court affirming a ruling of Appellee, Arkansas Department of Human Services (DHS), denying Appellant's request for Medicaid reimbursement of certain costs, tuition, and fees associated with its employees' enrollment in nursing school. Appellant raises five points for reversal, some of which require our interpretation of Appellee's Medical Assistance Program Manual of Cost Reimbursement Rules for Long Term Care Facilities (Manual of Cost Reimbursement Rules). Accordingly, the court of appeals certified this case to us as one involving a substantial question of law concerning the interpretation of an administrative rule. Jurisdiction is properly in this court pursuant to Ark. Sup.Ct. R. 1–2(b)(6) (2009). We find no error and affirm the judgment of the circuit court.

Appellant operates four skilled nursing facilities in Arkansas known as Covington Court Health and Rehabilitation, Fayetteville Health and Rehabilitation, Springdale Health and Rehabilitation, and Paris Health and Rehabilitation (the Facilities). The Facilities are licensed pursuant to the regulations of the Arkansas Office of Long Term Care. Appellee is an administrative agency of the State of Arkansas charged with, among many other things, regulating skilled nursing facilities in this state. In order to receive reimbursement from Medicaid for some of its costs, Appellant is required to submit annual cost reports to Appellee for approval pursuant to Appellee's Manual of Cost Reimbursement Rules.

Appellant submitted cost reports for each of the Facilities for the reporting period from July 1, 2004 to June 30, 2005. Under the category of direct care training costs, Appellant's cost reports sought reimbursement for tuition and expenses Appellant had paid to Facilities' employees related to their enrollment in a nursing school program. Appellee made certain desk review adjustments to the cost reports and disallowed the tuition and expense payments as direct care training costs. Appellant timely appealed each of the desk review adjustments in the form of a consolidated appeal.

The hearing examiner held a hearing on the consolidated appeal of the desk review adjustments. Appellant argued that the tuition and expenses should be allowed under the category of direct care training costs or alternatively under the category of direct care employee fringe benefits. The hearing examiner filed a recommended decision, dated May 31, 2007, concluding that the tuition and expenses at issue were not related to the employees' current duties at the Facilities, as required by section 3–2.M of the Manual of Cost Reimbursement Rules, and were therefore not allowable as direct care training costs. The recommended decision also concluded that the tuition and expenses at issue were not allowable as employee fringe benefits

because not all employees were eligible to participate in Appellant's tuition advance program as required by section 3–2.A.3(c) of the Manual of Cost Reimbursement Rules.

Appellee adopted the hearing examiner's recommended decision as the final agency action, and issued a final order dated July 9, 2007. Appellant filed a timely petition for judicial review in the circuit court. The circuit court held a hearing and ultimately issued a written order dated January 28, 2009, affirming Appellee's final agency order. This appeal followed. Appellant raises five points for reversal.

Judicial review of DHS decisions is governed by the Administrative Procedure Act, specifically Ark.Code Ann. § 25–15–212(h) (Repl.2002), which provides in pertinent part that a court may reverse an agency decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are

    (1) In violation of constitutional or statutory provisions;

    (2) In excess of the agency's statutory authority;

    (3) Made upon unlawful procedure;

    (4) Affected by other error or law;

    (5) Not supported by substantial evidence of record; or

    (6) Arbitrary, capricious, or characterized by abuse of discretion.

■■■ It is well settled that this court's review is limited in scope and is directed not to the decision of the circuit court but to the decision of the administrative agency. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). When conducting our review, we keep in mind that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies. *Ark. Dep't of Human Servs. v. Schroder*, 353 Ark. 885, 122 S.W.3d 10 (2003).

■■■ It is not the role of the circuit courts or the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Ark. Beverage Retailers Ass'n v. Langley*, 2009 Ark. 187, 305 S.W.3d 427. Substantial evidence is evidence that is valid, legal, and persuasive; it is evidence that a reasonable mind might accept to support a conclusion and force the mind to pass beyond speculation and conjecture. *Id.* The question is not whether the evidence would have supported a contrary finding, but whether it could support the finding that was made. *Id.* Further, it is the prerogative of the administrative agency to believe or disbelieve any witness and to decide what weight to accord witnesses' testimony. *Id.*

■■■ Appellant's first point for reversal is that Appellee erred in too narrowly interpreting the word "duties" in section 3–2.M.3 of the Manual of Cost Reimbursement Rules to require that direct care training expenses be related to the employee's current duties in the facility. Appellant contends that this narrow interpretation was arbitrary, capricious, characterized by |₅an abuse of discretion, and contrary to the plain meaning of section 3–2.M.3 which states that outside training costs are allowable when they are, among other requirements, "related to the employee's duties in the facility."

Section 3–2.M states as follow:

3–2 *List of Allowable Costs*

   · · · ·

M.  Outside training costs. These costs are limited to direct costs (transportation, meals, lodging, and registration fees) for training provided to personnel rendering services directly to the

recipients or staff of individual facilities. To qualify as an allowable cost, the training must be:

1. located within the State of Arkansas or a contiguous state within 250 miles of the facility; and

2. related to recipient care; and

3. related to the employee's duties in the facility.

Appellee responds that section 3–2.M.3 is plain and unambiguous such that when giving the words their plain and ordinary meaning, it is clear that all such training costs must be related to the employee's current rather than future duties.

In its recommended decision, the hearing examiner stated as follows:

15. The final requirement, that the training be "related to the employee's duties in the facility" was the requirement cited by [DHS] as making the costs nonallowable. Their position was that the trainings were not related to the employee's duties in the facility because a CNA training to be an LPN, or an LPN training to be an RN is receiving training on duties, procedures and issues that are not specifically related to that employee's current duties in the facility. [DHS] elicited testimony from all three witnesses to the effect that a CNA must stay within the parameters of duties allowed to be performed by a person with that level of licensure and cannot, for example, perform certain duties requiring an LPN license. The same would hold true for an LPN not performing certain duties requiring an RN license. This would apply even though they were in the process of training for the higher level of licensure. Until the LPN or RN credentials were awarded, they could not utilize their new knowledge in the workplace; therefore, [DHS] argues that those new skills and knowledge are not "related to the employee's duties in the facility."

. . . .

17. The question at hand is whether the relationship to the employee's duties must be to the employee's *current* duties, as defined by their level of licensure, job title and job description, or whether that relationship to the employee's duties in the facility can be read in a broader sense.

The facilities' argument that the wording in Section 3.2.M does not include the word "current" is certainly correct; however, the concept of the relationship to the duties being the employee's current duties is implied. The word "duties" engenders responsibilities and requirements that currently exist. The fact that the phrase is "the employee's duties" makes it clear that it relates to that particular employee's duties. It is true that if the relationship to current duties was a requirement, the word "current" could have been included. It would be equally valid, however, to argue that if training for duties not yet applicable to that employee or not yet allowable to be performed by that employee were meant to be covered, the phrase could have been written along the lines of "related to an employee's duties in the facility" or "related to the duties of a CNA, LPN or RN," or other such phraseology.

18. It is the finding of the Hearing Officer that the relationship must exist to the employee's current duties as defined by their level of licensure, job title and job requirements.

■ This court has held that the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Seiz Co. v. Ark. State Highway and Transp. Dep't,* 2009 Ark. 361, 324 S.W.3d 336; *Cave City Nursing*

*Home,* 351 Ark. 13, 89 S.W.3d 884. Relying on the hearing officer's recommended decision, Appellee observed that the word "current" is absent from the rule itself, but concluded that the concept of "current" duties is implied because the term "duties" engenders responsibilities and requirements that currently exist. A total of three witnesses testified at the hearing, two for Appellant and one for Appellee; all three opined that section 3–2.M.3 referred to current or present duties. Based upon our reading of the rule in question, the undisputed testimony from the witnesses, and the deference afforded the agency's interpretation of its own rule, we cannot say that Appellee's interpretation was too narrow or that it was clearly wrong.

For the sake of its second point for reversal, Appellant assumes that the meaning of "related to the employee's duties" in section 3–2.M.3 is limited in scope to the employee's current duties, and contends that there is no substantial evidence to support the decision that the tuition and expenses claimed were not related to its employees' current duties. Appellant contends there was no testimony provided that would indicate that the training or education programs at issue were limited in scope to providing nursing training only in areas beyond what that employee's current licensure would allow the employee to provide. Rather, argues Appellant, it presented ample evidence from its director of human resources, Ms. Sebrina Bowling, that the RN and LPN training programs are broad in scope and provide training in the subset of skills for the current certification and licensure maintained by the employee at the time of enrollment in the training program, as well as training for new skills.

Appellee responds that contrary to Appellant's assertion, the testimony showed that the expenses at issue were not training expenses for current duties but rather education expenses related to obtaining a higher level of certification and, therefore, related to possible future duties of employees.

Our review of the record reveals the following. Lynn Burton, the program administrator over the long term care provider reimbursement unit, testified that although further education may be a good thing for patient care, it is not necessarily related to an employee's current duties. Ms. Burton stated that although there may be some crossover in the duties of a CNA or LPN, just because an LPN is theoretically going to provide better care does not mean that the training is specifically related to current job duties. Ms. Bowling, testifying for Appellant, stated that a CNA working at a Facility can perform all of the duties of a CNA without going to nursing school, and that an LPN working at a Facility can perform all of the duties of an LPN without training to become an RN. She also stated that a CNA in nursing school could not perform LPN duties, as the CNA would not be licensed to do so and that Appellant's school tuition program was an "investment in the future of [its] employees."

The parties stipulated to the amounts in controversy and the total for the Facilities was $17,743. The findings of fact in the hearing officer's recommended decision were that the supporting documentation from the Facilities was in fact for tuition, fees, and books to colleges and other entities. The hearing officer observed that until the LPN or RN credentials were obtained, an employee could not utilize their new knowledge in the workplace, and concluded that advanced training was not necessary to perform current job duties. We conclude that the above-recited testimony and evidence to support the finding that the nursing school expenses were than current duties.

Before moving on to Appellant's third point for reversal, we note that in the midst of Appellant's second point on appeal, Appellant asserts that the evidence and testimony presented concerning its tuition advance program showed such program to be consistent with one of the goals of the Medicaid reimbursement methodology—the improvement of nursing skills and staff. According to Ms. Burton's testimony, the reimbursement methodology encourages long term care facilities to staff nurses by allowing reimbursement for salaries paid dollar for dollar up to the cap amount as direct care costs. Thus, the methodology currently at issue is for the reimbursement of nursing salaries, not for nursing education.

■ For its third point for reversal, Appellant again assumes for the sake of argument that we are concerned with current duties, and contends that Appellee erred in concluding that the training at issue was not necessary for its employees to perform their current duties. Here, Appellant takes issue with Appellee's interpretation of section 3–1.F.1 of the Manual of Cost Reimbursement Rules, which requires that allowable costs for reimbursement be reasonable and "necessary in the normal conduct of operations to provide recipient care in a facility." Essentially, Appellant argues that since the employment of nurses is necessary for the operation of the Facilities, then the education expense of becoming a nurse should be an allowable cost for reimbursement. Appellee responds that this argument ignores the fact that the Facilities already have the requisite nurses to operate in compliance.

Section 3–1.F.1 provides in relevant part as follows:

F. Definitions . . . .

1. Allowable costs—Those expenses that are reasonable and necessary in the normal conduct of operations to provide recipient care in a facility.

. . . .

(b) Necessary costs are those costs essential:

(1) to operate a long term care facility and deliver long term care in conformity with applicable federal, state, and local laws, rules, ordinances, and codes; and

2. to attain or maintain the highest practicable physical, mental, and psychosocial well being of each resident.

The hearing officer concluded that since the definition of necessary costs includes costs that are essential to the operation of a facility in compliance with all laws and regulations, "it cannot be said that this additional training and enhancement of existing job skills was essential." We agree with Appellee that in order for Appellant to be operating its Facilities in compliance with all applicable regulations, its employees would already be licensed to perform their duties. Appellant does not cite any industry regulation that requires it to pay for the education of its nurses. Accordingly, we cannot say that Appellee's conclusion that additional training and enhancement of existing job skills is not essential is arbitrary, capricious, or not supported by substantial evidence.

■ As its fourth point for reversal, Appellant contends that Appellee erred in concluding that the training costs at issue were discriminatory fringe benefits because not all employees are eligible to participate in the tuition advancement program. Here, Appellant argues that all employees were offered participation in the program, though only some were determined to be eligible.

■ Appellee responds that we are procedurally barred from reaching the

merits of this issue because Appellee took no adverse action against Appellant on these grounds. Appellee bases this contention on the fact that Appellant's initial cost report sought reimbursement of the costs at issue solely as direct care training costs and not as direct care employee fringe benefits. We do not agree that this argument is procedurally barred. In its consolidated appeal of the desk review adjustments, Appellant sought reimbursement of the costs at issue under the alternative theory that the costs were allowable as direct care employee fringe benefits. The fringe-benefits argument was addressed at all levels of this case from that point forward and ruled upon by the hearing officer. The record reveals that Appellee defended the argument below on the basis that it was not an allowable fringe benefit because not all employees received the benefit, and it was therefore a nonallowable discriminatory fringe benefit. The hearing officer agreed with Appellee's argument that the fringe benefit was discriminatory and ruled in Appellee's favor. When Appellee adopted the hearing officer's recommended decision as its final order, Appellee took adverse action against Appellant on this issue. Therefore, we conclude this issue is preserved for appellate review.

Proceeding now to the merits of the argument, we note that pursuant to section 3–2.A.3(c) of the Manual of Cost Reimbursement Rules, to be an allowable cost, expenses related to employee benefits must be offered to all full-time non-probationary employees on an equal basis in accordance with a written employee-benefit policy. Section 3–2.A.3 further clarifies that fringe benefits offered to only certain employees within the same employee class are discriminatory and are not allowable.

Appellant argues that the clear language of section 3–2.A requires that the benefit be offered to all employees within a class, not that all employees be eligible for the benefit. Appellant points to testimony from Ms. Bowling that the tuition advance program is included in its employee handbook and that Appellant offers the program to all its employees. However, Ms. Bowling also testified that the program has an approval process whereby a Facility administrator must recommend an employee for the program.

The hearing officer made the following relevant findings of fact in its recommended decision. Appellant's tuition advance program had five criteria. If all five were satisfied, then an application was submitted to a committee for approval. In her testimony, Ms. Bowling acknowledged that an employee could be denied the benefit of the program because he or she was a poor performer, not a good investment, or nursing was not what the employee needed to be pursuing. The hearing officer thus concluded that the testimony was uncontroverted that the benefit was not available to all employees and that the Facilities exercised discretion in choosing employees who are given the opportunity to avail themselves of this benefit.

The evidence was undisputed that Appellant exercised discretion in determining which employees were offered this benefit. Appellant offered the *opportunity to seek* the benefit of the program to all employees, but did not, according to the undisputed evidence, offer the *actual benefit* of the program to all employees. Accordingly, we cannot say this decision is arbitrary, capricious, or not supported by substantial evidence.

Appellant's fifth and final point raised in this appeal is not an argument for reversal but rather an attempt to demonstrate that it has been prejudiced by violation of a substantial right as required by the Administrative Procedure Act, section 25–15–212(h), before this court can

reverse the agency's order below. Here, Appellant contends that as a result of Appellee's alleged erroneous interpretation, Appellant's per diem reimbursement rate was negatively impacted, therefore Appellant's substantial rights were prejudiced. Appellant's assertion that a per diem Medicaid reimbursement rate rises to the level of a substantial right is without any citation to authority. It is not apparent to us that such an argument is well taken. Accordingly, we do not address this argument. We will not consider an argument, even a constitutional one involving substantial rights, if an appellant makes no convincing argument or cites no authority to support it. *See Hendrix v. Black,* 373 Ark. 266, 283 S.W.3d 590 (2008).

 In conclusion, we reiterate that an agency's interpretation of its own rules is highly persuasive, although it is not binding on the courts. *Sparks Reg'l Med. Ctr. v. Ark. Dep't of Human Servs.,* 290 Ark. 367, 719 S.W.2d 434 (1986). While we may reject an agency's interpretation of its own rule if the interpretation is contrary to the plain meaning of the rule, we ordinarily uphold an agency's interpretation of its own rule unless it is clearly wrong. *See Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin,* 348 Ark. 48, 69 S.W.3d 855 (2002). The question is not whether the evidence would have supported a contrary finding, but whether it could support the finding that was made. *Langley,* 2009 Ark. 187, 305 S.W.3d 427. While, as observed by the hearing officer, a tuition advance program is indeed a laudable program likely to result in improved skills and better patient care, we simply cannot say that such a program is subject to reimbursement under the Medicaid program given the clear language of the reimbursement rules as written. Ac-

cordingly, we affirm the denial of reimbursement of the tuition and expenses.

Affirmed.

IMBER, J., not participating.